### GEORGE FOSTER v. ROBERT JOHNSON ET AL.

#### No. 437.—Decided June 1, 1896.

1. **Warranty—After Acquired Title—Tax Sale.**

    A deed with covenant grant of general warranty will not pass to the grantee a title of the warrantor subsequently acquired by purchase at a sale for taxes accruing against the land after such warrantor's conveyance. (P. 644.)

2. **Tenant in Common—Possession of Homestead.**

    Against the devisee of the wife's community interest in the homestead the surviving husband had a right to occupy it while he chose, and the devisee could not claim partition; but the husband's occupancy and possession was as tenant in common with the devisee and enured to his benefit. (Pp. 644, 645.)

3. **Possession of Title—Outstanding Title.**

    Plaintiff having shown possession of the premises through his ancestor and subsequently by his co-tenant established a prima facie right to recover, devolving on defendant the burden of showing his title insufficient. Such burden was not met by the introduction of a patent from the State to a third party where defendant did not show his own or disprove his adversary's connection with such title. Following House v. Reavis, ante, 626; Rice v. Railway, 87 Texas, 90. (Pp. 645, 646.)

4. **Judgment for Tenant in Common Enures to Benefit of Co-Tenant.**

    One claiming title to land brought suit therefor against one of two claimants, tenants in common under an adverse title (the one sued being in sole possession as surviving husband occupying the community homestead). Defendant in that suit prevailed and had judgment divesting the plaintiff's title and vesting it in himself. The plaintiff then bought the property of the successful defendant, but with notice of the claim of the co-tenant, who thereafter brought suit against him for his half interest. Held, that the former judgment vesting title in the tenant in possession enured to the benefit of his co-tenant, the present plaintiff, and was a bar to the assertion by defendant that his original title, so divested by judgment, was superior to that claimed by the plaintiff in this suit. (Pp. 646 to 648.)

ERROR to Court of Civil Appeals for Second District, on a writ of error to Tarrant County.

The opinion states the case.

*Bass & Chapman,* for defendant in error, Johnson.—Johnson and Foster never had either actual or constructive possession of the lot in controversy at the same time, and Johnson's possession from its inception was exclusive of Foster. There can be no tenancy in common without unity of possession. The survivor's possession of the community home-

stead is exclusive as against the adult male child of the deceased spouse. 1 Washburn, Real Prop. (5 Ed.), 685; 3 Id., 138; 11 Am. and Eng. Encyl. Law, 1058; Rev. Stats., arts. 1993, 1996 (3) (4) and 2004.

This suit is in effect an action of trespass to try title, and Foster could recover, if at all, only on the strength of his own and not on the weakness of Johnson's title. The burden of proof was on Foster to establish the superiority of his title over that of Johnson. Barnes v. McArthur, 4 Texas Civ. App., 73; Starr v. Kennedy, 5 Texas Civ. App., 503; Peterson v. Fowler, 73 Texas, 527; Dangerfield v. Paschal, 20 Texas, 552; Grimes v. Hobson, 46 Texas, 416; Shepard v. Cummings, 44 Texas, 502; 1 Wash. Real. Prop. (5 ed.), 62; Rev. Stats., "Trespass to Try Title."

To entitle George Foster to recover of Robt. G. Johnson the title acquired by Johnson through Daggett, Brown, Stone and Hendricks, if this is properly a suit for partition and not trespass to try title, he would be required to do equity by offering to pay one-half of the purchase money expended by Johnson for such title, or to show affirmatively that no title was so conveyed to Johnson, or that the one so conveyed was inferior to that claimed by Foster. Johnson was not estopped by the judgment in favor of House against Stone, Hendricks and Johnson to litigate the question of title with Foster. Jones v. Lee, 86 Texas, 44, 45; Stout v. Taul, 71 Texas, 444; Mandeville v. Solomon, 39 Cal., 133; Freeman, Coten. and Part., sec. 156; Pomeroy Eq. Jur., sec. 385; Boone v. Knox, 80 Texas, 644.

No trust relationship was created on Johnson's part as to Foster by his (Johnson's) purchase from House, and Johnson was not thereby bound to any greater protection of Foster's interests than of any other stranger's. Roberts v. Thorn, 25 Texas, 737; Rippetoe v. Dwyer, 49 Texas, 505; Jones v. Lee, 86 Texas, 44, 45; 11 Am. and Eng. Encycl. Law, 1083.

*Hogsett & Orrick,* for plaintiff in error, Foster.—Actual possession by both Johnson and Foster was not necessary to constitute them tenants in common. It is sufficient if they both had a right to possession on the termination of House's life tenancy. Freeman on Co-tenancy and Partition, sec. 86, p. 144; Putnam v. Ritchie, 6 Paige, Ch., 398; Buckler's Digest, vol. 3, p. 269; La Vega v. League, 64 Texas, 214; Freeman on Co-tenancy and part., secs. 446, 447, 502 et seq.

In the absence of any pleading by means of which it can be ascertained by the court that expenditures have been made by Johnson for the benefit of the common property on its title, the question of a tender of equity cannot rise. La Vega v. League, 64 Texas, 214, 217; Freeman on Co-tenancy and partition, secs. 502, 446, 447.

The possession of House was the possession of Foster, and House having occupied the lot as a residence for more than ten years the period of limitation was complete as to Foster against Johnson. Am. & Eng. Encycl. of Law, vol. 1, p. 237, sec. 10; Am. & Eng. Encycl. of Law, vol.

20, p. 887 note; Chandler v. Phillips, 1 Root (Conn.), 546; Jackson v. Shoonmaker, 4 Johns., N. Y., 390; Moore v. Luce, 29 Pa. St., 260.

We take the position that at the time of trial of the cause of Stone v. House, House was the life tenant of Foster and as such life tenant was entitled to bring an action of trespass to try title, and that when sued by that form of action, he recovering judgment vesting the title in him, said judgment constituted him a trustee for Foster of such title as he got thereby, though Foster never had other title, and House recognizing and Johnson knowing of Foster's interest, the judgment inured to the benefit of Foster and Johnson is bound thereby.

BROWN, ASSOCIATE JUSTICE.—George Foster sued Robert G. Johnson in the District Court of Tarrant County for partition and to establish his title to an undivided half interest in the lot of land described in the petition; also to recover of Johnson a part of the rents derived from the property. The defendant Johnson pleaded not guilty to the action. The facts necessary to be stated are as follows:

The survey in which the lot in question is included was patented in 1868 to the heirs of John Childress, deceased. E. M. Daggett by warranty deed conveyed the lot to Edward W. Brown October 28, 1872. On April 1, 1878, Brown conveyed the lot by warranty deed to H. B. Stone. On May 10, 1878, the lot was sold for the State and county taxes for the year 1877, and on April 6th of the same year it was sold for the city taxes of the City of Fort Worth, at each of which sales E. M. Daggett became the purchaser. November 5, 1881, Daggett executed a quit-claim deed to Fannie W. House conveying to her whatever interest he had purchased at the tax sale as aforesaid. Fannie W. House was at the time the wife of J. W. House and the mother of George W. Foster, who was the child of a former marriage. This last deed was recorded March 6, 1882. Upon getting the deed from Daggett, Fannie W. and J. W. House moved upon the lot and improved and occupied it as a homestead, and were living there when Fannie W. died, October 27, 1882; and after her death J. W. House continued to live upon the lot as his homestead until he sold to Robert G. Johnson, as hereafter stated.

Fannie W. House made a will by which she devised all of her property to her son George Foster, which will was duly probated, H. C. Powell being appointed executor of the will, who duly qualified according to law and brought suit against J. W. House for the lot and buildings thereon. On May 3, 1883, final judgment was rendered in that suit, which recited the fact that the lot in question was community property of Fannie W. House and J. W. House, and that the fund amounting to $800, which went into the construction of the building, was community property, except $140, which was the separate property of Fannie W. House. The judgment further recites that it appears that Fannie W. House and J. W. House were husband and wife and occupied the whole of the property as a homestead at the time of her death; that J. W. House has since occupied the house as a homestead, and it was decreed

that so long as he so occupied it, the plaintiff should not recover posses-
sion.   George·Foster was a minor at the time and did not live with his
stepfather, but left the State soon after the death of his mother, re-
turning occasionally on a visit to Texas.

In April, 1882, H. B. Stone brought suit against Fannie W. House
and J. W. House in trespass to try title to recover the lot in question,
in which suit judgment was rendered for the plaintiff September 4, 1882,
from which judgment the defendants appealed to the Supreme Court.
December 5, 1885, the judgment of the District Court in that case was
reversed and the case remanded, the court holding that the tax title ob-
tained at the sale at which Daggett bought was invalid, but that there
was error committed by the trial court upon issue of improvements and
good faith.   The cost of the appeal was adjudged against H. B. Stone
and an execution issued from that court and was levied upon the lot
as the property of Stone October 4, 1886, under which levy the lot was
sold by the sheriff in November, 1886; Wallace Hendricks purchased it
for the sum of $121, the sheriff making a deed to Hendricks.

November 10, 1886, Hendricks conveyed by warranty deed to Robert
G. Johnson three-eighths of the lot in controversy, and on the 11th of
May, 1887, conveyed an additional one-eighth of the same lot to the
said Johnson, which deeds were duly recorded.   On January 2, 1891,
Hendricks conveyed to Johnson by quit-claim deed the entire lot.

Hendricks and Johnson, prior to the last sale, made by Hendricks to
Johnson, intervened in the case of Stone against House.   Fannie House
being then dead, they sought to make her heirs parties to the suit, but
this was never done, and on the 27th day of January, 1890, the suit was
dismissed as to the heirs of Fannie W. House, deceased.   The case was
then tried before a jury and a verdict and judgment rendered in favor
of the defendant J. W. House, by which it was decreed "that the plaintiff
and the intervenors take nothing of the defendant by reason hereof, and
that the defendant J. W. House do have and recover of and from the
said plaintiff H. B. Stone and said intervenors, R. G. Johnson and Wal-
lace Hendricks, the lands and premises in controversy herein described
(describing it) and that all the right, title and interest of the said H. B.
Stone and said intervenors R. G. Johnson and Wallace Hendricks of, in
and to the above described premises, being and the same is hereby di-
vested out of them, each of them, and vested in the defendant J. W.
House, for which he may have his writ of restitution."   This judgment
was, upon appeal to the Supreme Court, affirmed.

On December 22, 1890, J. W. House and his second wife, E. J. House,
who were still occupying the lot as a homestead, sold and conveyed it to
Robert G. Johnson, defendant in this suit, by deed containing a clause
of general warranty, which deed conveyed to Robert G. Johnson all the
right, title and interest of the grantors in the lot in question.   The deed
was duly acknowledged and accompanied with a memorandum in writ-
ing, reciting that the deed and two notes given for a part of the con-
sideration thereof should be deposited with James C. Scott, in Fort

Worth, to be held for both sides until House should get rid of a suit pending on the docket of the District Court of Tarrant County, Texas, of L. Dana v. J. W. House, wherein the title to the lot was called in question. If House prevailed in the suit, the two notes were to be delivered to him and the deed to Johnson. It is not shown what became of the suit of Dana v. House, but House and his wife continued to occupy the lot as a homestead under the agreement stated until August 1, 1892, when the deed was delivered and possession given by House to Johnson. The defendant Johnson had notice of the suit of Powell, executor, against J. W. House and of the judgment therein at the time he purchased from House, and he was informed by the latter that he (House) would not undertake to sell any interest owned by George Foster. Johnson, however, did not recognize that Foster had any interest in the property. He bought intending to acquire possession of the property and to assert his title under Stone and Hendricks against any claim of Foster.

The case was tried before the court without a jury, which rendered judgment in favor of Foster for one-half of the land and improvements, and decreed partition thereof, and also for $128.75 as rents due from Johnson to Foster. Johnson carried the case to the Court of Civil Appeals by writ of error, which last named court reversed the judgment of the District Court and rendered judgment in favor of Robert G. Johnson.

The Court of Civil Appeals held in this case that the purchase by Daggett at the tax sales enured to the benefit of his vendee under a warranty deed, one Brown, and through the warranty of Brown to the benefit of Stone, as well as to the benefit also of Hendricks and Johnson, who claimed under the sheriff's sale by virtue of execution against Stone. The tax sales at which Daggett bought were made for taxes accruing upon the land after he sold to Brown, and the purchase made by Daggett at such sale did not enure to the benefit of either Brown or Stone, for the reason that his warranty was not broken by the fact that the land was incumbered for such taxes. It is not necessary for us to elaborate this point, but it is sufficient to say that we do not approve of the opinion of the court upon that question. If the decision of the Court of Civil Appeals upon that point were correct, it would be unnecessary to proceed any further in the investigation of this case, but we hold that the title of Johnson cannot be sustained upon that view of the case, and will inquire as to whether or not the judgment of the Court of Civil Appeals can be sustained upon other grounds which have been suggested by the defendant in error in this court.

J. W. House and his wife Fannie House were in the actual possession of the land in controversy, claiming it as community property, and after the death of Fannie House, in a suit of her executor against J. W. House, the judgment of the District Court established the fact that the property was the community property of Fannie House and J. W. House, from which it results that one-half interest in the lot vested in Foster by virtue of the will of Fannie House. Upon the death of Fannie House, J. W. House and George Foster became tenants in common of the lot in contro-

versy. Akin v. Jefferson, 65 Texas, 142. Article 16, section 52 of the Constitution of this State, provides as follows "On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real estate of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the life time of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having jurisdiction, to use and occupy the same." Under this provision of the Constitution, J. W. House, as the surviving husband of Fannie House, had the right to occupy and use the premises as a homestead, and Foster could not claim partition of it so long as J. W. House continued to occupy and use it for such purposes, but this did not affect the character of the title under which House held the property. His occupancy and possession of the property was as tenant in common with Foster and enured to the benefit of Foster as well as himself. Knolls v. Barnhart, 71 N. Y., 474. In the case cited, the widow of the former owner of the property occupied the premises under her right as dowress and as the "guardian in socage" of the minor children, which the court held to be in her the possession of a tenant in common with all of the heirs. Under the Constitution the right of possession of the property in controversy as a homestead might be exclusive in House, or it might be that Foster, then a minor, would have had a right of joint possession under certain circumstances, but whether the right of possession was, under the existing circumstances, exclusive or not, it was nevertheless the posession of a tenant in common. The homestead right under the Constitution was not an estate in the land, but simply a right to use and occupy it for a specified purpose upon the contingency that it would cease whenever it was not occupied and used for that purpose. It follows then that the rights of Foster in the lot as a tenant in common were not affected by the exclusive possession of House, but that whatever rights existed in his favor as a tenant in common, notwithstanding that possession, would be enforced against House by the court.

Foster's suit was based upon the prior possession of his mother and her husband J. W. House during the life time of the mother and the continued possession by J. W. House after her death as tenant in common with the plaintiff. The defendant Johnson introduced in evidence the tax deeds to Daggett, a deed from Daggett to Fannie W. House, as well as the chain of title from Daggett to Stone, the evidence showing a sale by the sheriff to Hendricks and from Hendricks to Johnson; also a judgment rendered by the District Court of Tarrant County in the suit of Stone v. House, in which Hendricks and Johnson had intervened, by which judgment the title of the plaintiff Stone and the intervenors was divested out of them and vested in House; also a deed from J. W. House and his second wife to Johnson for the lot in controversy. It is unnecessary for us to determine whether upon the findings of the Court

of Civil Appeals the deed from J. W. House and his second wife to Johnson conveyed the entire lot or only J. W. House's interest in it, because it is not disputed that Johnson knew of Foster's right and claim in the lot, and this being true, House could not have conveyed to Johnson a greater interest than he had if he had undertaken to do so, and the result must be the same, whether he so undertook or not.

It having been shown that the mother of Foster, by virtue of whose will he claimed, and J. W. House were in the actual peaceable possession of the lot at the time of the mother's death, and that House continued in the possession of the same under and by virtue of the same title and claim, the right of Foster to recover his mother's interest in the land was established prima facie, which devolved the burden upon the defendant Johnson to show that the title which the law presumed to be in Foster was not a good and sufficient title upon which he could recover. House v. Reavis, decided at this term, and authorities there cited; Duren v. Strong, 53 Texas, 379.

In the case of Duren v. Strong, cited above, Mrs. Strong had possession of the land by a tenant. Duren, claiming title to the land, succeeded in getting the tenant of Mrs. Strong to attorn to him. Mrs. Strong sued Duren and the tenant for the land, when Duren undertook to establish title to the land in himself, but failed to connect with the sovereignty of the soil, and the Supreme Court held that the plaintiff was entitled to recover upon her prior possession. Judge Gould, delivering the opinion of the court, said: "In our opinion the judgment rendered may be supported on the ground of the prior possession of the appellee, whether that possession was under a deed duly registered, within the meaning of the statute of limitations of five years, or not. The efforts of defendants to show color of title in themselves failed, by reason of the failure to identify the land conveyed in the title bond from Thomas Morrow to J .R. Melton to the land in controversy. Plaintiff having clearly established a prior peaceable possession never abandoned, the defendants having failed to show any right to disturb that possession, the judgment in favor of the plaintiff should stand."

It is claimed by Johnson that he had, as against Foster, a superior title before his purchase from House, and that his purchase from House, the co-tenant of Foster, did not charge him as trustee for Foster's benefit, so far as his pre-existing title was concerned. We think that this is correct, but the question recurs, did he show such superior title by the evidence introduced?

If Johnson, Hendricks and Stone had a superior title to that of House and Foster, the effect of the judgment rendered in the case of Stone against House, Hendricks and Johnson being intervenors, was to divest all title out of the plaintiff and the intervenors and to vest it in J. W. House. The court must presume that the judgment giving this affirmative relief to House was based upon a cross-bill justifying such judgment, and we think that the natural presumption would be that in that suit House established the superiority of the title under which he

claimed, and by reason of that fact procured the judgment rendered in that cause. The result would be that the judgment would operate in favor of Foster; even if a new title were acquired by that judgment, it would vest in House as a tenant in common of Foster and enure to the benefit of Foster as well as House. Knolls v. Barnhart, supra; Roberts v. Thorn, 25 Texas, 735; Walker v. Read, 59 Texas, 190. In other words, after the judgment was rendered, House was still the tenant in common of Foster as to the title that he then had, with the right to call upon Foster for contribution to discharge any costs of that title to him. But this right of House against Foster for contribution could not affect the question of title as between Foster and Johnson. If, therefore, it be conceded that Johnson and Hendricks had the title superior to that of House and Foster before the judgment was rendered in that cause, that title was extinguished in them by the judgment and vested in House and Foster and by the conveyance from House to Johnson no greater interest could pass than House had in himself; he could not convey Foster's interest in the property in any event.

But if we disregard the judgment rendered in the case of Stone v. House, the evidence introduced by Johnson does not establish a title in him superior to that of Foster in this case. As before stated, the law presumes that Fannie W. House and J. W. House, being in the actual peaceable and continuous possession of the land, owned the same in fee simple, and that presumption prevailed also in favor of Foster claiming under Mrs. House. Caplen v. Drew, 54 Texas, 496. In the case last cited the plaintiff claimed under one Hollis, and the evidence showed that Hollis had been in the prior possession of the land; a judgment was rendered against Hollis, the land sold, and a party purchased it, under whom the plaintiff claimed. The court said: "If, as a matter of fact, Hollis was in possession of the lot at the rendition of that judgment, then the lien attached to that possession, and the rights attending the same and resulting therefrom, passed by the operation of the lien to and vested in the purchaser at the marshal's sale. Such possession would be evidence of title in Hollis, and as the purchaser connects himself directly with that possession by showing a judgment against Hollis, an execution, return and marshal's deed, this would constitute sufficient title in the purchaser, in the absence of other evidence, to entitle him to recover."

Johnson's evidence failed to connect him with the sovereignty of the soil, and for that reason failed to show that he had a superior title to that of Foster.

If we view the evidence in the light of showing an outstanding title to defeat the right of Foster, it falls short of the requirements of the law, because it does not show that any other person has a subsisting title under the patent to the heirs of Childress. The proof made that a patent had been issued to the heirs of Childress was not sufficient to establish that Foster and House did not have that title. House v. Reavis, decided at this term; Rice v. Railway, 87 Texas, 90. We have discussed

this question so thoroughly in the case of House v. Reavis, before cited, that we deem it unnecessary to repeat either the reasoning or the authorities used in that case.

Foster had a perfect right, under the evidence as against House, to have a partition. Johnson by his purchase was placed simply in the shoes of House, and against him Foster had the same right. Johnson having failed either to establish a superior title in himself or an outstanding title in another, waiving the question as to whether he would have been permitted to do so as against his tenant in common, the plaintiff in this case showed a right to recover of Johnson and establish his right to the land as well as to a partition thereof.

It was contended upon the hearing before this court by counsel for Foster that the petition in this case constituted simply and purely a suit for partition, while Johnson claimed that it was an action of trespass to try title, and that the plea of not guilty was a sufficient answer thereto. In the view that we have taken of the case, we have treated it as if it were an action of trespass to try title, being the most favorable view to the defendant in error. We do not, however, find it necessary to decide upon the question presented, as the result would in either case be that the plaintiff is entitled to recover one-half of the property in question.

The Court of Civil Appeals erred in reversing the judgment of the District Court and rendering a judgment in favor of Johnson for the property in controversy; for which error the judgment of the said Court of Civil Appeals is reversed and the judgment of the District Court is affirmed, and it is ordered that the plaintiff in error, Foster, recover of the defendant in error, Johnson, all costs of this court and of the Court of Civil Appeals.

*Judgment of the Court of Civil Appeals reversed, and judgment of the District Court affirmed.*