CAMPBELL et al. v. McLOUGHLIN et al.*
(No. 1185.)

(Court of Civil Appeals of Texas. Beaumont.
March 6, 1925. Rehearing Denied
March 18, 1925.)

1. Judgment ⚖️712—Judgment rendered in another action held admissible as link in defendants' chain of title.

In trespass to try title, judgment by which defendants recovered the land in another action *held* admissible as a link in defendants' chain of title, since it was as effective to vest title out of record owner and in defendants as if conveyance had been voluntarily made.

2. Judgment ⚖️712 — In favor of limitation claimant effective to vest title out of record owner.

Judgment in favor of a limitation claimant for land is as effective to vest title out of record owner and in claimant as if conveyance had been voluntarily made.

3. Judgment ⚖️712—Rendered in another action held to vest defendants with true title to land claimed.

In trespass to try title, judgment by which defendants recovered land in another action *held* to vest defendants with true title thereto, and to make them privies with chains of title from record owner back to state as original grantee.

4. Judgment ⚖️712—Defendants held to have right to rely on full strength of record owners' chains of title and to offer them in defense of plaintiffs' claims.

In trespass to try title, defendants, who recovered the land in another action against record owners, could rely on full strength of their chains of title and offer them as a defense against interest asserted by plaintiffs.

5. Judgment ⚖️951(2) — Jury's verdict on which judgment rendered in another action was based held properly·excluded.

In trespass to try title, in which judgment rendered in another action by which defendants recovered the land against record owners was admitted, court did not err in excluding jury's verdict on which judgment was based, where plaintiffs were claiming nothing under judgment, which did not have legal effect contended for by them, and was not subject to exceptions urged against it.

6. Trespass to try title ⚖️38(2)—Defendants held to have burden of showing affirmatively that common source did not own outstanding title under which defendants claimed.

In trespass to try title, in which both parties claimed under a common source, defendants could not defeat plaintiffs' superior title under the common source simply by showing outstanding title, but burden was on them to show affirmatively that common source did not own outstanding title under which defendants claimed.

7. Trespass to try title ⚖️38(2)—Presumption that common source owns superior title and has acquired all outstanding titles prevails only where titles are not fully developed.

Usual presumption that common source owns superior title and has acquired all outstanding titles prevails only where titles are not fully developed and where evidence does not make a complete exhibition of titles.

8. Trespass to try title ⚖️38(2)—Burden on plaintiffs to show that common source owned superior title and had acquired all outstanding titles.

In trespass to try title, in which both parties claimed under a common source, and in which plaintiffs traced their title back through common source to state, and showed that state was common source, burden was on plaintiffs to show that common source owned superior title and had acquired all outstanding titles.

9. Appeal and error ⚖️1050(1) — Whether judgment rendered in another action properly admitted held immaterial.

In trespass to try title, in which both parties claimed under a common source, whether judgment rendered in another action, by which defendants recovered land from record owners, was ·properly admitted *held* immaterial, where, if in evidence, it connected defendants with outstanding titles, and, if not in evidence, then there was no showing that record owners did not own the land.

10. Trial ⚖️350(3)—Refusal to submit issue raised by testimony of impeached witness held not erroneous.

In trespass to try title, court did not err in refusing to submit issue whether plaintiffs had acquired title by limitations raised by testimony of defendants' witness, where plaintiffs impeached such witness on every phase of his evidence that was subject to rebuttal, and must have destroyed absolutely his credibility before jury.

11. Trial ⚖️350(3) — Submission of issue whether common source had possession of land under statutes of limitation prior to execution sale held not erroneous.

In trespass to try title, submission of issue whether common source had possession of land

under statutes of limitation prior to time same was sold on execution *held* not erroneous, where only issue against plaintiffs' claim of possession was length of time that common source had occupied the land.

**12. Trial ⊜352(1)—Issue held sufficient to carry to jury question as to how long common source had occupied the land.**

In trespass to try title, issue whether common source had possession of the land under statutes of limitation, as the same has been defined, prior to execution sale *held* sufficient to carry to jury issue as to how long common source had occupied the land.

**13. Appeal and error ⊜1170(10)—Any error in form of issue as submitted held cured.**

In trespass to try title, any error in submission of issue whether common source was in possession of land under statutes of limitation prior to execution sale *held* cured under rule 62a, in absence of showing that, if a correct issue had been presented, jury could not in good conscience have found in favor of plaintiffs' claim.

Appeal from District Court, Hardin County; J. L. Manry, Judge.

Action by S. Campbell and others against R. E. McLoughlin and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

K. C. Barkley and W. S. Parker, both of Houston, for appellants.

Smith, Crawford & Sonfield, of Beaumont, and D. F. Singleton, of Kountze, for appellees.

WALKER, J. The Smith and Davidson grants are adjoining surveys in Hardin county, Tex., the Smith immediately north of the Davidson. The David Choate grant was junior to the Smith and Davidson, and was in part laid on the western end of these two senior grants; thus creating a conflict involving a large part of the Choate.

In 1873, under lawful executions against David Choate, the sheriff of Hardin county sold 400 acres of the David Choate grant to S. G. McClenny and an adjoining tract of 200 acres to L. H. Daniels, conveying by these deeds all the right, title, and interest owned in the land by David Choate at that time. Appellants, by heirship and mesne conveyances, hold under these sheriff's deeds, which were valid in every respect and effective to pass whatever interest David Choate owned in the land at the time of the sale. These two tracts of land, while on and a part of the David Choate, were included in the conflict between that survey and the Smith and Davidson grants. Appellees claimed by heirship and a chain of regular transfers under David Choate and his wife, Mary Choate.

Appellants instituted this suit against appellees in the usual form of trespass to try title to recover from them the 600 acres

above described, pleading also limitation in favor of David Choate on the theory that he had perfected a limitation title against the Smith and Davidson titles prior to the execution of the sheriff's deeds to McClenny and Daniels in 1873. Appellees answered by the usual pleas, and also sought to show: (a) That this land was the separate property of the wife of David Choate at the time of the execution sales; (b) that a title by limitation was perfected by David Choate and his wife subsequent to the execution of the sheriff's deeds; (c) that the grantees under the sheriff's deeds had reconveyed the land to David Choate and his wife. Appellees also sought to show that the Smith and Davidson titles were superior outstanding titles against the title asserted by appellants, and that they had connected themselves with those titles.

On a trial to a jury, appellants offered in evidence the complete David Choate chain of title from the state to themselves through David Choate, and, for the purpose of showing common source, the title from David Choate to appellees. Appellees then offered the complete chains of title from the state to Smith and Davidson, and from and under them to the Houston Oil Company, showing an active assertion of title by the Houston Oil Company and those under whom it held. This showing brought these titles down to about 1916. Then appellees offered in evidence a judgment whereby they and those under whom they hold recovered from the Houston Oil Company certain lands, including all the land in controversy in this suit. This was the judgment in the case of Houston Oil Co. v. Polly Choate et al., reported from the Court of Civil Appeals in 215 S. W. 118, and from the Supreme Court in 232 S. W. 285, to which reference is here made for a more detailed history of that case. Enough of the pleadings in that case was offered in evidence to show that the judgment was based on a plea of limitation.

On conclusion of the evidence in the case now before us, the trial court instructed a verdict for appellees for all the land on the Smith, but submitted to the jury the issue of limitation on the Davidson under the following issue, requested by appellants:

"Did David and Mary Choate, or either of them, have possession of the land in controversy in this suit under the three or five year statutes of limitation as the same has been defined for either the three or five years prior to June 3, 1873?"

The jury answered this question in the negative. On proper questions the jury found against appellees on their issues of separate property, limitation, and reacquisitions of the title under the grantees in the sheriff's deeds executed in 1873. On the verdict of the jury a judgment was entered in favor of

appellees for all of the land in controversy, on the theory that the Smith and Davidson titles were superior outstanding titles to the Choate, and that they had connected themselves with and were in privity with those superior titles. From the undisputed evidence and from the verdict of the jury it appears, and we so find, that appellants now own and hold whatever interest David Choate was shown to own in the David Choate at the time of the execution of the sheriff's deeds in 1873; that is to say, they own and hold the superior title under David Choate as common source. It follows then that the correctness of the judgment in favor of appellees can be sustained only on the theory that appellees established as a matter of law (a) an outstanding title superior to the David Choate, and that such outstanding title had not passed to David Choate prior to the execution of the sheriff's deeds in 1873 (b) or that they had connected themselves with such outstanding title by showing in an affirmative way that they owned it.

#### Opinion.

Appellants have stated the issues in this appeal in the following questions:

[1, 2] Question No. 1:

"Was the judgment rendered in the case of Houston Oil Company v. Polly Choate et al., in the district court of Hardin county, Tex., in 1916, admissible in evidence as a link in appellees' chain of title, or as a muniment of their title?"

Appellants objected to the introduction of the judgment in the Polly Choate Case on the following grounds:

"The defendants in said cause offered in evidence as a link in their chain of title under Houston Oil Company of Texas, and for a statutory effect as evidence, judgment in cause No. 1796, Houston Oil Company of Texas v. Polly Choate et al., rendered in the district court of Hardin county, Tex., in March, 1916, whereby it was adjudged and decreed by the court that the interveners, Mrs. D. P. McLoughlin et al., recovered said land, for the reason it was not involved in defendants' chain of title or as a muniment of title.

"That the portion of said judgment offered in evidence, being only the decreeing part thereof, unaccompanied by the issues submitted to the jury and their answers therein explaining the basis of same, was inadmissible for statutory effect or otherwise."

The decreeing part of the judgment in this cause No. 1796 reads as follows:

"And it appearing to the court that the Houston Oil Company of Texas has heretofore dismissed its suit as plaintiff herein, and the same is hereby dismissed, and it further appearing that Mrs. Polly Choate and John W. Davis, original defendants in this suit, are dead, and that the only parties remaining to this suit are the interveners, Mrs. D. P. McLoughlin et al., and the Houston Oil Company of Texas; and it appearing that the said interveners, Mrs. D. P. McLoughlin et al., are entitled to recover the land described in their intervention and cross-action, and the said interveners having moved for judgment herein, it is ordered, adjudged, and decreed by the court that the interveners, Mrs. D. P. McLoughlin, Ester Owen, Samuel Owen, her husband, Ettie Keller and Arthur Keller, her husband, Dora Shields and R. J. Shields, her husband, Lorenze Votaw, Jay McGehee, Hattie Martin and Lee Martin, her husband, Mable Baker, Fannie McGehee, Effie Davidson and Tom Davidson, her husband, Marion White and Robert White, her husband, Opal Votaw White and James White, her husband, Carrol C. Votaw, Mrs. Mary Votaw, George McGehee, and Farley McGehee, and R. E. McLoughlin, do have and recover of and from the Houston Oil Company of Texas the following described tract or parcel of land, to wit:

"All that certain tract or parcel of land granted to David Choate, Jr., on the 28th day of October, 1848, by the Governor of Texas, by virtue of his headright certificate No. 345, issued by the board of land commissioners of Liberty county, Tex., on the 6th day of June, 1839, said land being situated on the north side of Pine Island Bayou, about three miles from the mouth, in said Hardin county, Tex., and more particularly described as follows:

"Beginning for its southeast corner at the southwest corner of a survey made for Lefroy Guidry, which corner was anciently marked by a pine tree marked 'L. G.' bearing S. 12 deg. W. 2.2 varas, and another marked 'X' bore therefrom S. 81 deg. W. 2.4 varas, where a pipe and concrete monument formerly stood; thence westwardly with said bayou about 1,576 varas to the southwest corner of said David Choate survey from which originally a pin oak marked 'D. C.' bore N. 59 deg. E. 4 varas, another marked 'X' bore S. 32 deg. E. 5.5' varas, and is now marked by an iron pipe at said corner from which a gum 12" bears N. 70½ deg. E. 8.1 varas, and a tupalo gum at the edge of the water in said bayou bears S. 47½ deg. E. 15 varas; thence N. 5,250 varas to a corner from which originally a pin oak marked 'D. C.' bore S. 80 deg. E. 4 varas and a sweet gum marked 'X' bore S. 24 deg. E. 5.2 varas and from which corner a black gum marked 'X' bears S. 24 deg. E. 3.2 varas and a pin oak 6" bears S. 38¾ deg. E. 2.7 varas; thence in an easterly direction 1,576 varas to corner, 4,633 varas north of the place of beginning; thence south 4,633 varas to the place of beginning, and being the southeast corner of the David Choate survey.

"And it is the further judgment of the court that the said interveners do have and recover of and from the said Houston Oil Company of Texas all costs in this behalf expended, and all orders, process, and executions issue as may be necessary to carry out this decree.

"L. B. Hightower; Judge."

These objections were not well taken. It is now the doctrine of the courts of this state that a judgment in favor of a limitation claimant for land is as effective to vest the title out of the record owner and to vest it in the claimant as if the conveyance had been voluntarily made.

In Owens v. Land Co. (Tex. Civ. App.) 45 S. W. 601, the court held:

"Judgment obtained against a party in favor of another for the title to property is as effectual in passing title as if conveyance had been voluntarily made thereto."

In the case of Foster v. Johnson, 89 Tex. 640, 36 S. W. 67, it was shown that Foster and J. W. House were tenants in common, and that, while this relation existed, judgment was rendered in the district court suit styled Stone v. House, in which Hendricks and Johnson had intervened; the judgment being in favor of House for the land involved (89 Tex. 646, 36 S. W. 70).

Our Supreme Court, speaking through Justice Brown, said:

"If Johnson, Hendricks, and Stone had a superior title to that of House and Foster, the effect of the judgment rendered in the case of Stone against House, Hendricks and Johnson being interveners, was to divest all title out of the plaintiff and the interveners and to vest it in J. W. House. * * * The result would be that the judgment would operate in favor of Foster; even if a new title were acquired by that judgment, it would vest in House as a tenant in common of Foster and inure to the benefit of Foster as well as House. * * * If, therefore, it be conceded that Johnson and Hendricks had the title superior to that of House and Foster before the judgment was rendered in that cause, that title was extinguished in them by the judgment and vested in House and Foster."

In Ellis v. Le Bow, 96 Tex. 532, 74 S. W. 528, it would seem that the direct question presented by this appeal was before the court. It was held—the quotation sufficiently gives the facts:

"The judgment of the district court of McLennan county, rendered on the 7th day of November, 1895, in the case of Eugenie and Tassie Ellis, joined by their husbands, against Green B. Stone and the heirs of Jesse Russell, deceased, vested in the plaintiffs in that case all the title which the heirs of Jesse Russell had in and to the land at the time that suit was instituted, at which time Mrs. S. F. Stone and Mrs. S. J. Stone, two of the children and heirs of Jesse Russell and parties defendant to that suit, had an undivided half interest in the land here sued for. Therefore that judgment vested in Eugenie and Tassie Ellis an undivided half interest in the 1,000 acres of land described in the judgment. The judgment was admissible against the defendants, although not parties to the action, as a muniment of title to establish the fact that plaintiffs had acquired the title of the heirs of Jesse Russell in the 1,000 acres, and in connection with the proof of heirship of the parties and the grant of the patent to Jesse Russell constituted a chain of title from the sovereignty of the soil. McCamant v. Roberts, 66 Texas, 262, 263; 2 Black on Judg. § 607."

This court held to the same effect in Philadelphia Trust Co. v. Johnson (Tex. Civ. App.) 257 S. W. 280.

Question No. 2:

"Did the judgment, as admitted by the court, when construed in the light of the pleadings, verdict of the jury, and the record of that case generally, in connection with all other testimony offered by appellees to connect their title with that of Smith and Davidson leagues, operate to establish that appellees acquired such title and held it in such manner as to enable them to use it to defeat a title not connected with it?"

Question No. 3:

"Did this judgment, when construed in connection with the whole record of the case, operate to establish that David Choate had perfected a title by limitation against the titles of the Smith and Davidson leagues prior to June, 1873, thereby extinguishing them so as to leave no title in the Houston Oil Company in March, 1916?"

Question No. 4:

"Did the appellees by the introduction of the judgment and causing to be placed before the court in evidence the record of the Houston Oil Company suit establish that the title conveyed by P. S. Watts, sheriff, June 3, 1873, to L. H. Daniels and S. G. McClenny, had extinguished the titles of the Smith and Davidson prior to that date, and was therefore the superior one?"

[3, 4] The verdict of the jury in Houston Oil Co. v. Polly Choate was not in evidence, and therefore did not aid the court in construing the effect of the judgment in that case. There was nothing in evidence to explain the recitals of that judgment, nor to limit their legal effect. As introduced, we think that judgment had the effect of vesting in appellees the true title to the Smith and Davidson grants, and to make them privies with the chains of title from the Houston Oil Company back to the state as the original grantee. Holding under that judgment, appellees had the right to rely upon the full strength of the Smith and Davidson chains of title and to offer them in their defense against the claims of all adverse interests, including the interest aserted by appellants in this case.

[5] In this connection, appellants complain of the ruling of the court excluding the verdict of the jury in the Polly Choate Case, which they offered as evidence. They did not offer the verdict as vesting any affirmative right in them. It was not their contention that the judgment, construed in the light of the verdict, vested any affirmative right in them. Their purpose was to have the judgment excluded, and, if not excluded, then it was their contention that, construing it in the light of the pleadings and the verdict of the jury, it extinguished the Smith and Davidson senior titles to the land in controversy, or, to quote from their brief:

"If the court should determine that such judgment was admissible, then, if appellants are correct in their assignments and propositions

wherein they claim that the legal effect of the judgment after it was admitted was merely to show that the Houston Oil Company's title had been adjudged to be inferior to the common source title, as some authorities state, merely to show that such titles had been silenced or extinguished or the right of entry thereunder 'tolled,' or, to use the language of Boone on Real Property, § 477, 'were dead' under the statute of limitation, or 'had been * * * extinguished,' then the court should reverse and render the case upon the legal effect of the judgment after it was admitted without consideration of any further assignments."

Since appellants were claiming nothing under the judgment, and since under the decisions of this state it did not have the legal effect contended for by them, and was not subject to the exceptions urged by them, the court did not err in excluding the verdict of the jury upon which it was based.

What we have said on the foregoing issue is independent of appellees' counterproposition that the verdict of a jury is not admissible to limit its legal consequences, nor "as a medium of proving some fact as found by the verdict, or upon the supposed existence of which the judgment is founded." Mc-Camant v. Roberts, 66 Tex. 260, 1 S. W. 260.

Question No. 5:

"Did appellees, holding under common source title with appellants, discharge the burden imposed upon them by law, and establish affirmatively that such common source had not in some manner previously acquired the alleged superior outstanding title, or that such common source was without title?"

[6-8] Since it appeared that appellants and appellees were claiming and holding under David Choate as common source, appellees could not defeat appellants' superior title under the common source simply by showing an outstanding title, but the burden rested upon them to make an affirmative showing that the common source did not own that title. The usual presumption is that the common source owned the superior title and had acquired all outstanding titles. Rice v. Railway, 87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72; Foster v. Johnson, 89 Tex. 647, 36 S. W. 67. But this presumption prevails only · in those cases where the titles are not fully developed and where the evidence does not make a complete exhibition of the titles. Here appellants did not rest with David Choate as common source, but traced their title back through him to the state, and showed that the state was the common source. Then, since the title originated with the state, and since the evidence made a complete exhibition of the David Choate title, there was no room for any presumption. The exact status of the common source title was shown completely, and under that showing there was no ground for a presumption that he had · any other title. It was made to appear in an affirmative way that

David Choate as common source did not own the Smith and Davidson titles. With the state as the original source of these titles, the Smith and Davidson were independent titles, in no way connected with the Choate. As to this character of title, it was said by our Supreme Court in Ferguson v. Ricketts, 93 Tex. 565, 57 S. W. 19, reaffirmed in Ellis v. Lewis (Tex. Civ. App.) 81 S. W. 1034, that—

"No presumption arises that the common source has acquired an independent outstanding title. Such presumption would nullify the rule that the title of the common source may be attacked by showing a superior outstanding title."

Appellants recognized the burden that rested upon them, and tried to show that the common source acquired these outstanding titles under the three and five year statutes of limitation prior to the execution of the sheriff's deeds in 1873, but the verdict of the jury was against them on those issues.

[9] It is our judgment that appellees rightfully recovered because they connected themselves with the Smith and Davidson titles, which were superior to the Choate, through the judgment in Houston Oil Co. v. Polly Choate. But, if the court erred in admitting that judgment—and that is the proposition most strenuously urged by appellants—then, as those titles are outstanding and claimed in an affirmative way by the Houston Oil Company and those under whom they held all the way back to the state, appellants could not recover, since those titles constituted superior outstanding titles, and showed in an affirmative way that ·they were not the owners of the land. As we understand this record, it is a matter of absolutely no concern to appellants' case whether the judgment was properly admitted or not. If in evidence, it connects appellees with the outstanding titles. If not in evidence, then there is no showing that the Houston Oil Company did not, in fact, own the land, but it does appear that appellants do not own it.

[10] Question No. 6:

"Did appellants establish a title by the statute of three-year limitation to the land in controversy prior to June 3, 1873, so conclusively by undisputed testimony that the court should have held such facts as conclusive against appellees, and entered judgment for appellants?"

One George Womack was the principal, and, it might be said, the only, witness on the issues of limitation. It appeared from his testimony that David Choate occupied for some indefinite period a portion of the Davidson grant in conflict with the Choate prior to 1873. Mr. Womack was appellees' witness. Assuming that his evidence established their limitation claims, appellants now advance the proposition that the court should have construed the effect of such evidence

and should have instructed a verdict for them; it being their contention that, since appellees offered him as a witness, they thereby vouched for his integrity, and, since no issue was made against the force of his evidence, it established their claims as a matter of law. Without reference to the legal proposition raised by appellants, it is sufficient to say that they impeached this witness on every phase of his evidence that was subject to rebuttal, and must have destroyed absolutely his credibility before the jury, since they found contrary to his evidence on every issue submitted to them. This was done so effectively that, though they complained, on the submission of this case, both by oral argument and by brief, that the trial court should have submitted the issues of limitation on that part of the land lying on the Smith, they now concede in a supplemental brief since filed, that though, as they claim, Mr. Womack's evidence raised the issue in their favor, yet he was so effectually impeached by them that the court did not err in refusing to submit the issue to the jury.

[11, 12] This brings us to appellants' seventh question, involving to some extent, the issue just discussed:

"Was the action of the court in failing and refusing to define the meaning of 'peaceable and adverse possession,' and the meaning of 'title' and 'color of title,' error, and was that error calculated to confuse the minds of a jury and require a reversal of this case?"

As appears from the submission of the issue of limitation:

"Did David and Mary Choate, or either of them, have possession of the land in controversy in this suit under the three or five year statutes of limitation as the same has been defined for either the three or five years prior to June 3, 1873?"

—the court did not use the words "peaceable and adverse possession" and "title" and "color of title." Against this charge appellants advance the following propositions:

"The terms in the court's charge, Did David and Mary Choate, or either of them, have possession of the land in controversy under either the three or five year statutes of limitation as the same has been defined to you for either the three or five years prior to June 3, 1873, embodied conclusions of law calculated to mislead them or induce a verdict predicated upon a misunderstanding of a proper application to be given such terms in the absence of instructions from the court defining 'peaceable' and 'adverse' possession."

"The terms in the court's charge, 'Did David and Mary Choate, or either of them, have possession of the land in controversy under either the three or five year statutes of limitation as the same has been defined to you for either the three or five years prior to June 3, 1873,' embodies conclusions of law calculated to mislead them or induce a verdict predicated under a misunderstanding of the proper application to be given such terms, in the absence of an instruction from the court defining the ordinary use and meaning of such terms."

We do not think the submission of this issue constituted reversible error, for the following reasons:

(1) The only issue against appellants' claim of possession was the length of time David Choate occupied the land. We think it must be conceded that for whatever period he held the land it was adverse, within the terms of our statutes of limitation. Then we think this question was sufficient to carry to the jury the issue as to how long David Choate occupied the land.

[13] (2) If the issue of limitation was raised in appellants' favor, it was by the testimony of Mr. Womack. As we have just said, he was effectively impeached by them on every phase of his evidence, in fact, to such an extent that, though they claim that his evidence raised an issue in their favor on the Smith, yet in a supplemental brief filed since submission they abandon that assignment, saying: "Appellants do not insist on the truth of Womack's statements, or their reliability in reference to the possession of Foss Jones on Blue Nettle Ridge"; that being the evidence they originally claimed raised the issue in their favor on the Smith. Now on this concession that they had so effectually impeached this witness that they conceded as a matter of law that a jury could not have believed him on one phase of the case, we think, if error was committed in the form of the issue as submitted, that it is cured under rule 62A; that is to say, it must appear that, if a correct issue had been presented, a jury could not in good conscience have found in favor of appellants' claim.

Question No. 8:

"Was the action of the court in peremptorily instructing the jury that the testimony had undisputedly established the lines of the Smith and Davidson leagues, as embracing that part of the Choate sued for, an invasion of the province of the jury to such grave extent as to require a reversal?"

The evidence so unmistakably shows that the land in controversy was on the Smith and Davidson grants that the court correctly assumed that fact in his charge to the jury. All the evidence was to that effect, and there was no evidence to the contrary. Then on the oral submission of this case, in answer to questions from the court, appellants' counsel conceded without question that the land was, in fact, on these grants.

For the reasons given, the judgment of the trial court is in all things affirmed.

HIGHTOWER, C. J., not sitting.