Jean **HOFFMAN**, Appellant,

v.

Anderson **TOLBERT** et al., Appellees.

No. 7154.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 1, 1959.

Rehearing Denied Sept. 29, 1959.

Boulter, Fowler & Tunnell, Tyler, Joseph W. Cash, Houston, for appellant.

Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, for appellees.

FANNING, Justice.

Appellees, the heirs of Anderson Tolbert, Sr., deceased, sued appellant, Jean Hoffman, the heir and devisee of P. A. Hoffman, deceased, in trespass to try title for certain lands in Smith County, Texas and for cancellation of a purported power of attorney and conveyance of ½ of the minerals in and under said lands from Anderson Tolbert, Sr., deceased, to P. A. Hoffman, dated March 19, 1940, on the ground of forgery and other stated grounds. In a trial before the court without the aid of a jury, judgment was rendered for plaintiffs-appellees for the title and possession of the land sued for and for cancellation of the instrument in question. The trial court filed findings of fact and conclusions of law. Defendant-appellant Jean Hoffman has appealed.

Appellant's first point reads as follows:

"The judgment should be reversed and rendered because appellees undertook but failed to deraign title from the sovereignty of the soil, having introduced the patent from the State of Texas, several conveyances to Anderson Tolbert, the Plaintiff's ancestor, and having offered the unknown contents of an abstract of title which was subsequently withdrawn."

Appellees introduced in evidence deeds from A. A. King conveying to Anderson Tolbert and wife the land in question and also the patent from the State of Texas to Brooks, assignee of Slaughter, covering said land. Appellees further introduced in evidence, for the purpose of showing common source of title, a certified copy of the purported power of attorney and conveyance from Anderson Tolbert to P. A. Hoffman. Thereafter appellant Jean Hoffman introduced in evidence the recorded original of said instrument showing her claim to the ½ mineral interest involved in the lawsuit.

Appellees attempted to get in evidence, but did not get in evidence, an abstract, the contents of which are not shown in the record; the introduction in evidence of such abstract was objected to by appellant and upon the stipulation of appellant that at least one of the appellees was an heir of

Anderson Tolbert, deceased, and if otherwise entitled to recover, was entitled to recover for the whole estate, appellees' offer of the abstract was withdrawn. Consequently said abstract did not go into the evidence, does not appear in the record in this case, and the contents of same are of course unknown to this court.

Appellant offered no testimony to show title superior to that of appellees under the common source or to show that she held a superior title not connected with the common source or to show that the true title was outstanding or to show prior possession under deeds not connected with the common source. The only evidence offered by appellant was the recorded original of the questioned instrument, the testimony of the notary Starr relating to the issue of forgery and the testimony of one of her attorneys to the effect that he had made extensive efforts to locate the witness Spain and had failed to do so.

In 41A, Tex.Jur., Sec. 166, pp. 709–10, it is stated:

"It is presumed that the common source held the titles of all previous owners of the property. But this presumption can exist only where the title is not fully exhibited. Thus, if the plaintiff, instead of resting his case upon proof of common source, has attempted to connect the common source with the sovereignty of the soil—thus tendering a complete exhibition of his chain of title—a presumption will not be indulged that the common source held any other title."

It is clearly evident from the record in this cause that appellees did not introduce in evidence a complete exhibition of their chain of title to the land in question. It is also clear from the record that Anderson Tolbert was the unquestioned common source of title, with both appellant and appellees claiming under Anderson Tolbert.

Appellant's first point is deemed to be without merit under the record in this case

and is overruled under the following authorities: Rice v. St. Louis, A. & T. Ry. Co., 87 Tex. 90, 26 S.W. 1047; Foster v. Johnson, 89 Tex. 640, 647, 36 S.W. 67; Cocke v. Texas & N. O. R. Co., 46 Tex. Civ.App. 363, 103 S.W. 407, wr. ref.; McBride v. Loomis, Tex.Com.App., 212 S.W. 480; Temple Lumber Co. v. Arnold, Tex. Civ.App., 14 S.W.2d 926, wr. dis.; Jackson v. Jackson, Tex.Civ.App., 114 S.W.2d 644, wr. dis.

In Rice v. St. Louis, A. & T. Ry. Co., supra [87 Tex. 90, 26 S.W. 1048], it is stated:

"Evidence that the defendant claims title under the common grantor is prima facie proof that such grantor had the title at the time he undertook to convey the right which the defendant claims; and this necessarily involves the assumption that he had acquired the title of all previous owners. The rule as to * * * common source means this, if it means anything."

In Foster v. Johnson, supra [89 Tex. 640, 36 S.W. 70], it is stated:

"If we view the evidence in the light of showing an outstanding title to defeat the right of Foster, it falls far short of the requirements of the law, because it does not show that any other person has a subsisting title under the patent to the heirs of Childress. *The proof made that a patent had been issued to the heirs of Childress was not sufficient to establish that Foster and House did not have that title.*" (Emphasis added.)

In Cocke v. Texas & N. O. R. Co., supra [46 Tex.Civ.App. 363, 103 S.W. 408], it is stated:

"The records show that plaintiff in error claims title under a common source with defendants in error; and, such being the case, he could not defeat a recovery by defendants in error by merely showing that a person other than the common source at one time

held title, *but he must go further and show at least prima facie that the common source was without title*, the presumption being that the title so shown to have existed in another person had passed to the common source. Under this rule it may be conceded that the administration proceedings did not divest the title of the heirs of John Austin in the land, yet the presumption remains that the Allens, under whom the parties to this suit all claim, in some way acquired the title of said heirs and this presumption is not rebutted by any evidence in the record." ˙ (Emphasis added.)

■ Appellant by her second point contends that there was no evidence of probative force to support the finding by the trial court that the instrument in question was a forgery, and by her third point .contends that such finding was contrary to the great weight and preponderance of the evidence.

The instrument in question was purportedly signed by Anderson Tolbert by making his mark, which mark was purportedly witnessed by Rich Tolbert, his brother, and by W. D. Spain. Anderson Tolbert did not appear before the Notary, R. B. Starr, who purportedly took the acknowledgment of the purported witnesses Rich Tolbert and W. D. Spain, as attesting witnesses to the instrument.

Rich Tolbert denied signing the instrument as witness and denied attesting to same before Starr. Rich Tolbert, the brother of Anderson Tolbert, further testified that he lived within five miles of his brother, that he had never seen the original of the instrument in question, that he did not see Anderson Tolbert sign such instrument, that Anderson Tolbert never told him that he signed it, that the only two times he saw Anderson Tolbert during his last illness Anderson was not able to talk to him, that he, Rich Tolbert, did not sign the instrument in question and that Anderson never asked him to sign anything for him, that he, Rich Tolbert, did not sign

anything within two years before Anderson Tolbert's death and that he never saw Anderson any place but his home during the last two years of his life, that Anderson Tolbert could write his name "good."

A. T. (Anderson) Tolbert, Narthelia Jeffries, Angeline T. Hall and Juanita Alexander, all children of Anderson Tolbert, deceased, testified to the effect that they were living with their father when he died and had so lived all their lives, that their father Anderson Tolbert was over 70 years of age when he died, that he was sick in bed at home for between one and two years before his death on January 5, 1941, that insofar as they knew one of his children was with Anderson Tolbert at all times, that no one ever brought him any papers to sign, that he did not talk to any white men or sign papers for anyone during his last illness, that Anderson Tolbert could write his name, always wrote his name and never to their knowledge did he sign anything with an "X", that they each knew the signature of Anderson Tolbert, could recognize same and that the signature on the instrument in question was not his signature.

Geneva Tolbert, another daughter of Anderson Tolbert, deceased, also testified, among other things, to the effect that she knew her father's handwriting, that he wrote a good, readable hand, and reading the questioned instrument testified: "That is not his handwrite."

The children of Anderson Tolbert also testified to the effect that the first they knew or heard of the instrument in question was in the fall of 1957 which was about the time oil was discovered on the ˙land in controversy.

The instrument in question was dated March 19, 1940, but was not filed for record with the county clerk of Smith County, Texas, until March 16, 1953, about 13 years after it was purportedly executed.

The execution of the instrument in question was attacked by an affidavit of forgery

by appellees. No one testified that they saw Anderson Tolbert sign the questioned instrument. R. B. Starr, the Notary Public, testified among other things that the signature of the Notary acknowledgment to the instrument was his signature and that Rich Tolbert and W. D. Spain came to his house and told him that they had seen Anderson Tolbert sign the instrument in question and that he took their acknowledgment to such instrument. The recorded instrument bearing Starr's acknowledgment was introduced in evidence by appellant.

W. D. Spain did not testify. One of appellant's attorneys testified to the effect that he had made extensive efforts to locate W. D. Spain and had failed to do so.

The testimony of the notary Starr was directly contradicted by the deposition testimony of Rich Tolbert and the credibility and weight of the testimony of these two witnesses was a matter addressed to the sound discretion of the trial court. The trial court evidently believed the testimony of Rich Tolbert and evidently did not believe the testimony of the notary Starr.

Also as above shown there was circumstantial evidence in the case tending to prove that the instrument in question was a forgery. It is well settled law in this state that forgery of an instrument may be proved by circumstantial evidence, especially where the grantor is dead. Watson v. Robertson's Heirs, 15 Tex. 333; Henderson v. State, 14 Tex. 503.

We hold that there was ample evidence of probative force to support the trial court's finding that the instrument in question was a forgery. Appellant's second point is overruled.

We also hold that the evidence was amply sufficient to support the trial court's finding that the instrument in question was a forgery.

We have also carefully considered all the evidence in the case in the manner and under the rules laid down by the Supreme

Court of Texas in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and hold that the trial court's finding that the instrument in question was a forgery was not so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and manifestly unjust. Appellant's third point is overruled.

■ Appellant by her 4th, 5th and 6th points attacks certain fact findings and a conclusion of law of the trial court on the grounds that there was no evidence of probative force to support such findings and conclusion, and that such findings and conclusion were contrary to the overwhelming weight and preponderance of the evidence and on other stated grounds. The fact findings and conclusion of law of the trial court so attacked are as follows:

Findings of Fact

"7. During a period several months prior to the date of the above purported Power of Attorney, P. A. Hoffman obtained or filed for record a considerable number of similar Powers of Attorney and Conveyance of Interest purported to have been given by various parties in Smith County, and possibly in other adjoining counties, the grantors being mostly Negroes (Anderson Tolbert, Sr., was a Negro). These instruments were in substantially the same form as the above referred to instrument. His activities were of such questionable character that the District and County Attorneys of Smith County, Texas, investigated his activities to determine whether the said instruments constituted frauds or forgeries. They felt they were able to make a case with reference to his activities as a violation of the Texas Securities Act [Vernon's Ann.Civ.St. art. 581–1 et seq.] and on July 17, 1940, the Grand Jury indicted him for this latter offense. Hoffman obtained an attorney to obtain his release from jail on bond and to represent

him in the criminal proceedings. His attorney then negotiated with the District and County Attorneys for a settlement of the charges upon the basis of the following agreement:

"Hoffman would plead guilty to the offense of dealing in securities without a license and be fined $50.00 and costs. In return for this minor conviction and the agreement not to prosecute him further with reference to the said Powers of Attorney and Conveyances of Interest, Hoffman agreed to sign an instrument which would release and quit-claim to the various parties from whom he had obtained such instruments affecting land in Smith County, Texas, and in adjoining counties, all the interest so conveyed to him, and releasing the Powers of Attorney.

"8. An instrument was prepared by the County Attorneys and District Attorney in accordance with this agreement which when signed by Hoffman, released and quit-claimed to the persons who had executed such Powers of Attorney and Conveyances of Interest conveying land in Smith County, Texas, and adjoining counties, which would operate to revest in said parties all the right, title and interest of Hoffman in said properties.

"9. Hoffman executed and acknowledged the said instrument before a notary public and it was delivered by his attorney to the County Attorney of Smith County, for the benefit of all parties who had executed such instruments to Hoffman. Simultaneously, P. A. Hoffman plead guilty and paid the small fine in the minor offense and the agreement between the said parties was so performed.

"10. The release and quit-claim instrument referred to above was not filed for record through oversight, and although diligent search has been made for it, the said instrument cannot be found and must be considered a lost instrument."

Conclusions of law

"2. The instrument of release and quit-claim dated on or about November 18, 1940, which was executed by P. A. Hoffman and delivered by his attorney to the County Attorney of Smith County operated to release and quit-claim to Anderson Tolbert, Sr., any interest purported to be conveyed by the said Power of Attorney and Conveyance dated March 19, 1940 to Anderson Tolbert, Sr., and Plaintiffs are entitled to have said release and quit-claim established as a lost deed and as a link in their chain of title."

We have carefully reviewed the record and are of the opinion that there was evidence of probative force to support the above quoted fact findings of the trial court, that same are sufficiently supported by the evidence, and that after considering all of the evidence in the cause under the rules laid down by the Supreme Court of Texas in the case of In re King's Estate, supra, it is our further opinion that such findings by the trial court were not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. We also hold that the trial court's said above quoted conclusion of law was correct under this record. Appellant's 4th, 5th and 6th points are respectfully overruled. However, in the event we should be mistaken in overruling appellant's points 4, 5 and 6, the judgment of the trial court would still be a correct one since it is amply supported by the trial court's findings that the instrument in question was a forgery.

Appellant's 7th point reads as follows:

"The error of the court in permitting parties claiming as heirs of the deceased Grantor, Anderson Tolbert, to testify to transactions with the deceased Anderson Tolbert."

Appellant in her statement in her brief under her 7th point (although generally complaining of the evidence elicited from the heirs of Anderson Tolbert) only points out one specific matter, i. e., to the effect that Anderson Tolbert told the heirs before he died that the 86 acres was clear and they had nothing to worry about. Appellant in her brief under said point also admits that "some of the testimony" objected to was not subject to objection. The trial court in passing on the objections by appellant to various depositions with respect to the dead man's statute stated as follows:

"I am going to admit it with that reservation though. Of course all of those questions which elicit answers in violation of article 3716 will not be considered by the court, and I am doing this in order that we can expedite the matter and later I can sit down and read them and study them." (Referring to the depositions.)

██ There was ample evidence in the record (excluding the complained of evidence in appellant's 7th point) to support the judgment of the trial court. Also appellant's 7th point does not present error because there was no showing made that the trial court considered or gave any weight to the complained of testimony (or any inadmissible testimony) and the presumption is that the court did not consider any inadmissible evidence, and this is especially true where the trial court states that it would not consider any testimony in violation of Article 3716, Vernon's Ann.Civ. St. Santos v. Morgan, Tex.Civ.App., 195 S.W.2d 927, wr. ref., n. r. e. Appellant's 7th point does not present error under this record and is overruled.

Finding no reversible error in the record and finding that the trial court entered a correct judgment in favor of appellees, the judgment of the trial court is accordingly affirmed.

Affirmed.