**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Lucille Mitzy Bosco ROGERS, Individually and as surviving spouse of Philip S. Bosco, et al., Defendants-Appellees.**

Nos. 79–3358, 80–1020.

United States Court of Appeals, Fifth Circuit. Unit A

July 6, 1981.

Rehearing and Rehearing En Banc Denied Sept. 28, 1981.

---

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, William S. Estabrook, Wynette J. Hewett, Attys., Tax Div., Dept. of Justice, Washington, D.C., for the U.S.

Ray, Trotti, Hemphill, Moore & Peterson, William David Elliott, J. Michael Wylie, Dallas, Tex., for defendants-appellees.

(July 6, 1981)

Before CHARLES CLARK, TATE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case presents the interesting question whether the federal government may foreclose a federal tax lien on the Texas homestead of a delinquent taxpayer in order to satisfy the delinquent taxpayer's tax liability, when the taxpayer's spouse, also having an interest in the homestead, has no federal tax liability.

## I. *Facts*

The facts in this case are not in dispute. In 1955, appellee Lucille Mitzy Bosco Rodgers [1] and her husband at that time, Philip S. Bosco, acquired as community property a residence in Dallas, Texas, which they occupied with their children as their homestead under Texas law.[2] In 1971 and 1972, the federal government made assessments against Philip S. Bosco for federal wagering taxes in the amount of $927,284.79, plus penalties and interest, for the taxable years 1966 through 1971. When Philip S. Bosco died in 1974, these taxes remained unpaid, as they do today. Mrs. Rodgers herself has no federal tax liability.

After her husband's death, Mrs. Rodgers continued to occupy the residence as her homestead. Her children of the marriage have since married and moved to their own homes. Mrs. Rodgers has remarried and now resides in the residence with her second husband. She plans to continue to maintain the residence as her homestead. At the time this suit was filed, she held no property that belonged to her deceased husband other than the homestead and certain personal property of less than $500.00 in value.

On September 23, 1977, the government instituted this suit in the United States District Court for the Northern District of Texas in order to: (1) reduce to judgment the tax assessment made against Mrs. Rodgers' deceased husband; (2) enforce the federal tax liens against all the property that belonged to the deceased taxpayer, including his interest in the Texas homestead of Mrs. Rodgers; and (3) obtain a deficiency judgment for any unsatisfied amount of the tax liability of the deceased taxpayer. Appellees, Mrs. Rodgers, her two adult children, and the executor of her deceased husband's estate, moved for summary judgment on the ground that the federal tax liens may not defeat Mrs. Rodgers' interest in the homestead. They also asserted that they were entitled to recover, under 42 U.S.C. § 1988 (1976), attorney's fees in the amount of $3,000.00. The government filed a cross-motion for partial summary judgment on the questions whether the federal tax lien could be enforced against the homestead and whether appellees, defendants below, were entitled to recover attorney's fees.

On August 2, 1979, the district court denied the government's motion and granted summary judgment in favor of appellees. The court also awarded appellees attorney's fees in the amount of $3,000.00. The government filed notice of appeal from the district court's summary judgment for appellees together with the award of attorney's fees. The government then filed a second appeal of the district court's amended judgment after the district court granted the government's motion to alter or amend the district court's earlier judgment to one of only partial judgment in favor of appellees. This change in the judgment has no relevance to the substantive issues on appeal. These two appeals have been consolidated before us.[3] We now address the

---

**1.** Mrs. Rodgers' name was inadvertently misspelled in the caption of the case.

**2.** *See* Tex.Const. art. XVI, §§ 50–52.

**3.** In addition, this case was consolidated for oral argument with the separate case of *Ingram v. City of Dallas Department of Housing and Urban Rehabilitation,* 649 F.2d 1128 (5th Cir. 1981), which involved the enforcement of a

propriety of the summary judgment for and attorney's fees award to appellees separately.

## II. *Lien Foreclosure*

Under the Internal Revenue Code of 1954, if a taxpayer neglects or refuses to pay federal taxes upon assessment, notice, and demand by the government, a lien arises upon "all property and rights to property" belonging to the delinquent taxpayer. 26 U.S.C. §§ 6321, 6322 (1976). The Secretary of the Treasury or his delegate may bring an action to enforce a tax lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest . . ." to the payment of his taxes. *Id.* § 7403(a).

■ The questions of whether and to what extent a taxpayer has "property" or "rights to property" are determined under the applicable state law. *Slodov v. United States*, 436 U.S. 238, 256, n.19, 98 S.Ct. 1778, 1789 n.19, 56 L.Ed.2d 251 (1978); *Aquilino v. United States*, 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *Broday v. United States*, 455 F.2d 1097, 1099 (5th Cir. 1972). Once it has been determined under state law that the taxpayer owns property or rights to property, however, federal law controls for the purpose of determining whether a lien will attach to and be enforceable against such property or rights to property. *United States v. Mitchell*, 403 U.S. 190, 204–05, 91 S.Ct. 1763, 1771–72, 29 L.Ed.2d 406 (1971); *Broday v. United States*, 455 F.2d at 1099.

■ The realty involved in this case was, at the time of the attachment of the federal tax liens, the community property of Mrs. Rodgers and the now-deceased taxpayer under Texas law. *See* Tex.Fam.Code Ann. § 5.01 (Vernon 1975). Each spouse therefore owned an undivided one-half interest in the property. *Free v. Bland*, 369 U.S. 63, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). In addition, the land was also the Boscos'

homestead. Under Texas law, homestead property possesses different attributes and confers different interest to each spouse than does nonhomestead property.[4] Unlike nonhomestead property in Texas, a Texas homestead, whether the separate property of either spouse or community property, is exempt from forced sale, may not be alienated except on consent of both spouses, and, to the extent consistent with federal law, may not be encumbered by liens other than purchase money, property tax, and materialmen's liens. Tex.Const. art. XVI, § 50; Tex.Fam.Code Ann. § 5.81 (Vernon 1975). The homestead also may not, on the death of one of the spouses, be partitioned among the deceased spouse's heirs during the lifetime of the surviving spouse, so long as the surviving spouse chooses to occupy it as a homestead, or so long as the guardian of the minor children may be permitted by law to occupy it. Tex.Const. art. XVI, § 52. Each spouse possesses these interests in the homestead separately and distinctly from those of the other spouse.

Having determined that the deceased delinquent taxpayer had an undivided one-half interest in the homestead community property under Texas law, we turn now to federal law to determine whether the federal tax liens attached to and may be executed against his property interest, notwithstanding the lack of tax liability on the part of his spouse, Mrs. Bosco, now Mrs. Rodgers, and the absence of any tax liens on her undivided one-half interest in the property.

The resolution of this case would have been greatly simplified had the property in this case been merely community property, without also being homestead property, since it is clear that nonhomestead community property may be reached by the government for the tax debts of either spouse. *See Broday v. United States*, 455 F.2d 1097 (5th Cir. 1972) (levy upon Texas community property checking account to satisfy antenuptial federal tax debt of one

---

federal tax lien against a Texas homestead when one spouse was solely liable for one federal tax and both spouses were liable for a separate, second federal tax.

**4.** *See also* the related discussion, *infra*, addressing the question whether the Texas homestead provisions merely grant an exemption from creditors, or instead confer a property right.

spouse). The presence of a tax liability limited to only one spouse would have been irrelevant.

This case, however, is complicated by the combined facts that the property involved is also homestead property and that only one spouse has federal tax liability. As one commentator points out:

> [T]here is a conflict in the cases as to whether a tax lien is valid upon a homestead interest. It has been held that the states cannot carve out homestead exemptions from the effect of the Federal tax liens. The resolution of this issue may depend upon whether there is involved a single interest of the taxpayer who is subject to tax liability, or whether both spouses have an interest while only one is under a tax liability.

9 J. Mertens, Law of Federal Income Taxation § 54.52 (1977) (footnotes omitted). Thus, contrary to the government's assertion, the presence of homestead property in this case renders inapplicable the rule of *Broday, supra,* which involved nonhomestead rather than homestead community property.[5]

In analyzing the issue before us, we note at the outset that the homestead interest of a *taxpayer* spouse, *i. e.,* that of one who himself has tax liability, clearly cannot by itself defeat a federal tax lien. Section 6334(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 6334(a) (1976), specifies certain property that is to be exempt from a levy to satisfy federal tax liability.[6] Homestead property is not listed in § 6334(a) as exempt property. The Code further provides, in § 6334(c):

> (c) No other property exempt.—Notwithstanding any other law of the United States, no property or rights to property shall be exempt from levy other than the property specifically made exempt by [§ 6334(a)].

26 U.S.C. § 6334(c) (1976). Section 6334(c) thus would preclude the classification of homestead property as exempt property under § 6334(a). This conclusion is made clear by § 301.6334–1(c) of the Treasury Regulations promulgated by the Commissioner of Internal Revenue under the Code:

> (c) *Other property.* No other property or rights to property are exempt from levy except the property specifically exempted by section 6334(a). No provision of a State law may exempt property or rights to property from levy for the collection of any Federal tax. Thus, property exempt from execution under State personal or homestead exemption laws is,

---

**5.** We also distinguish, for the same reason, *United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971), *United States v. Dallas Nat. Bank,* 152 F.2d 582 (5th Cir. 1945), *modified on other grounds,* 164 F.2d 489 (5th Cir. 1947), and *Davis v. Birdsong,* 275 F.2d 113 (5th Cir. 1960). In *Mitchell,* the Supreme Court held that the government could collect delinquent taxes of a married Louisiana couple from the wife's one-half interest in their community property, even though the wife had, after the dissolution of the marriage, "renounced" her community "gains" under Louisiana law. In *Dallas Nat. Bank,* this Court allowed the enforcement of a federal tax lien against the delinquent taxpayer's income obtained from a testamentary trust of which she was a beneficiary and which contained, among other things, the testator's homestead. Finally, in *Davis,* this Court held that, in order to collect the "transferee liability" of a widow, as a transferee of assets from her deceased husband's estate, for the income tax liability of her deceased husband, the government could execute a tax lien on the nonhomestead realty that had been set aside under Georgia law to the taxpay-

er's widow as "year's support." Since these cases did not involve foreclosure of tax liens on homestead property, they do not control in the instant case.

**6.** Section 6334(a) provides, in pertinent part:
Enumeration.—There shall be exempt from levy—
(1) Wearing apparel and school books. * * *;
(2) Fuel, provisions, furniture, and personal effects. * * *;
(3) Books and tools of a trade, business, or profession. * * *;
(4) Unemployment benefits. * * *.
(5) Undelivered mail. * * *.
(6) Certain annuity and pension payments. * * *.
(7) Workmen's compensation. * * *.
(8) Judgments for support of minor children. * * *.
(9) Minimum exemption for wages, salary, and other income. * * *.
26 U.S.C. § 6334(a) (1976).

nevertheless, subject to levy by the United States for collection of its taxes. 26 C.F.R. § 301.6334–1(c) (1980). Hence, the federal tax liens in this case clearly attached to the deceased taxpayer spouse's interest in the realty claimed as a homestead. They also undoubtedly could be executed against that interest if his was the only interest in the homestead, or if *both* spouses were delinquent taxpayers and the liens had attached to each spouse's interest in the homestead. *See United States v. Estes*, 450 F.2d 62 (5th Cir. 1971); *Shambaugh v. Scofield*, 132 F.2d 345 (5th Cir. 1942).

That the liens *attached* to the taxpayer spouse's homestead interest, however, does not necessarily mean that they may be *foreclosed* or otherwise enforced in a particular manner.[7] The authorities are divided over the question whether the government may execute a tax lien against a taxpayer spouse's interest in realty claimed as a homestead when the other spouse, having an equal interest in the homestead property, has no tax liability. The Ninth Circuit has held, in *United States v. Heffron*, 158 F.2d 657 (9th Cir. 1947), *cert. denied*, 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1845 (1947), that a federal tax lien may be levied against a delinquent taxpayer spouse's one-half interest in the proceeds of the sale by the trustee in bankruptcy of the California homestead of the bankrupt taxpayer and his spouse in order to satisfy the taxpayer spouse's tax liability. Rejecting the nontaxpayer spouse's effort to obtain a $2,500.00 exemption provided under California law from the amount of the taxpayer spouse's one-half interest levied upon, the court stated that exemptions prescribed by state laws are "ineffective" against federal tax liens. *Id.* at 659.

The Eighth Circuit is in accord with the Ninth Circuit's holding and reasoning in *Heffron.* In both *United States v. Heasley*, 283 F.2d 422 (8th Cir. 1960) and *Herndon v. United States*, 501 F.2d 1219 (8th Cir. 1974), the Eighth Circuit held that the government may foreclose its tax lien on the taxpayer spouse's homestead interest in order to collect that spouse's unpaid taxes, notwithstanding the nontaxpayer spouse's interest in the homestead property. The court in *Heasley* followed the reasoning in *Heffron* that state homestead exemptions are of no effect against federal tax liens. 283 F.2d at 427. The *Herndon* court based its decision on its view that the Code provisions, discussed above, ancillary regulation, and supremacy clause of the United States Constitution dictate such a result. 501 F.2d at 1223.

Other authorities have reached the opposite result in determining whether the government may execute a federal tax lien against the homestead interest of a taxpayer spouse when the other spouse possesses an equal interest in the homestead and he or she has no tax liability. The Tenth Circuit has, in *United States v. Hershberger*, 475 F.2d 677 (10th Cir. 1973), adopted an analytical approach which focuses upon the nature of the interest created by the particular state's homestead laws. The Tenth Circuit has made a distinction between a homestead interest as an *exemption* under state law and a homestead interest as a *property right* under state law. Under this distinction, if a homestead is merely an exemption from general creditors under state law, then the nontaxpayer spouse's interest therein will not prevent execution of a federal tax lien upon the taxpayer spouse's interest in the homestead. *United States v. Hershberger*, 475 F.2d at 682. If, however, state law confers more than a mere exemption, and instead raises a homestead interest to the status of a present property right, then a federal tax lien may not be foreclosed against the homestead property for as long as the nontaxpayer

---

7. *Compare Tillery v. Parks*, 630 F.2d 775 (10th Cir. 1980), in which the Tenth Circuit permitted *attachment* of a federal tax lien on a taxpayer spouse's one-half interest in the homestead notwithstanding the effect on the alienability of the nontaxpayer spouse's one-half interest, *with United States v. Hershberger*, 475 F.2d 677 (10th Cir. 1973), in which the Tenth Circuit disallowed *foreclosure* on the homestead to satisfy the federal tax liability of the taxpayer spouse, due to the homestead interest of the nontaxpayer spouse.

spouse's interest therein exists under state law. *Id.* In *Hershberger,* the court, finding that the Kansas homestead laws confer a present property right rather than a mere exemption, held that the government could not enforce its tax lien against the Kansas homestead interest of the delinquent taxpayer spouse so long as the nontaxpayer spouse maintained the property as her homestead, due to the nontaxpayer spouse's undivided one-half property interest in the homestead. *Id.*[8]

This distinction has also been applied by the Ninth Circuit. *See Shaw v. United States,* 331 F.2d 493, 497 (9th Cir. 1964) (finding a California homestead to be mere exemption and, accordingly, that nontaxpayer spouse could not remove federal tax lien from homestead as cloud upon her one-half interest). The Eighth Circuit, however, has rejected the validity of this distinction, and has also, as discussed *supra,* disagreed with the view that a nontaxpayer spouse's interest in a homestead might defeat a federal tax lien. *See Herndon v. United States,* 501 F.2d at 1222–23.

The government contends that the law in this Circuit is consistent with that of the Eighth Circuit and, as reflected in *Heffron,* the Ninth Circuit.[9] The government asserts that this Court's decisions in *Shambaugh v. Scofield* and *United States v. Estes,* in which we permitted federal levy on Texas homesteads, should govern the instant case. We disagree. Both *Shambaugh* and *Estes* are distinguishable from the instant case. In each of those cases, both spouses possessed federal tax liability. Hence, the federal lien in each case attached to the homestead interests of both spouses. The granting of lien foreclosure in *Shambaugh* and *Estes* simply reflected the supremacy of a federal tax lien over the homestead interest of a delinquent taxpayer. In contrast, the case at hand involves the tax liability of only one spouse. The tax liens here, therefore, attached only to the taxpayer spouse's interest in the homestead property; the interest of the nontaxpayer spouse, Mrs. Bosco, now Mrs. Rodgers, is free of any tax liens. Despite this freedom, however, Mrs. Rodgers' interest in the homestead property obviously would be seriously affected by any foreclosure on the interest of the deceased taxpayer spouse. *Shambaugh* and *Estes* therefore do not apply in the situation before us. *See Morgan v. Moynahan,* 86 F.Supp. 522, 525 (S.D.Tex.1949).

This Court has previously dealt on one other occasion with the attempt by the government to enforce a federal tax lien against the homestead interest of a delinquent taxpayer spouse despite the equal interest in the homestead of the other spouse and the absence of tax liability of the latter. On that occasion, this Court utilized the distinction between an exemption and a property right subsequently employed by the Tenth Circuit in *Hershberger* and the Ninth Circuit in *Shaw.* In *Weitzner v. United States,* 309 F.2d 45, 47–48 (5th Cir. 1962), *cert. denied,* 372 U.S. 913, 83 S.Ct. 727, 9 L.Ed.2d 720 (1963), this Court was faced with facts identical in all relevant respects to those in the instant case, except that a Florida homestead rather than a Texas homestead was involved. In *Weitzner,* we first quoted with approval the statement of one commentator that, although " '[i]t is well settled that state exemption laws do not protect property against federal tax liens,' " *id.* at 47–48 (quoting 9 J. Mertens, Law of Federal Income Taxation § 54.52, at 102), the resolu-

---

**8.** Earlier, the Tenth Circuit had stated, in dicta in *Jones v. Kemp,* 144 F.2d 478, 480 (10th Cir. 1944), that a nontaxpayer spouse has an indivisible, vested interest in a homestead which, if the person's marriage is valid so as to entitle him or her to claim a homestead interest, cannot be subject to levy and sale for the federal tax liability of the taxpayer spouse. The court in *Jones* permitted foreclosure, however, since the nontaxpayer spouse's marriage was invalid and she accordingly could not claim a homestead interest under Oklahoma law.

**9.** The law in the Ninth Circuit is somewhat unclear, since the Ninth Circuit has used both the "homestead exemptions are of no effect" approach of the Eighth Circuit, *see United States v. Heffron,* 158 F.2d at 659, and the exemption-property right distinction of the Tenth Circuit. *See Shaw v. United States,* 331 F.2d at 497.

tion of the issue whether a federal tax lien is valid upon a homestead interest " 'may depend upon whether there is involved a single tax interest of the taxpayer who is subject to tax liability, or whether both spouses have an interest while only one spouse is under tax liability.' " *Id.* (quoting 9 J. Mertens, Law of Federal Income Taxation § 54.52, at 102). We then stated that "[i]f it is determined that a wife does not have, during the lifetime of her husband, a *property right* in a homestead . . . , we need proceed no further and the Government should prevail." *Id.* at 48 (emphasis added). Finding that a Florida homestead interest was an exemption rather than a property right under Florida law, *id.*, we allowed the government to foreclose its tax lien against the taxpayer spouse's interest in the homestead property despite the nontaxpayer spouse's homestead interest. Although we did not expressly indicate what the probable outcome would have been had the Florida homestead laws conferred a property right rather than merely creating an exemption, our reasoning implied that foreclosure of the lien would not have been permitted in such event.[10]

This position that foreclosure of a federal tax lien on a homestead will be denied when the nontaxpayer spouse has a present property right in the homestead property under state law is consistent with the reasoning and holdings of analogous cases of this Circuit. In *Carter v. United States ex rel. D. I. R.*, 399 F.2d 340 (5th Cir. 1968), this Court disallowed federal levy in an action by a nontaxpayer spouse to enjoin the government from foreclosing its tax lien on the interest of her delinquent taxpayer spouse in their Louisiana homestead, owned equally by the taxpayer and herself. In doing so, we reasoned as follows:

> [A]s an undivided one-half interest in the property was owned by the [nontaxpayer spouse], separate and apart from her husband, the [government] cannot now attempt to seize and sell this interest on the theory that it comprises part of the husband's estate. The [government] is precluded from asserting title to property allegedly in the estate of the debtor husband when that property never formed part of his estate. The undivided one-half interest of the [nontaxpayer spouse] is, therefore, immune from seizure and sale by the [government].

*Id.* at 343.[11]

Further, this Court held, in *Folsom v. United States*, 306 F.2d 361 (5th Cir. 1962), that, because of the property interests of other cotenants, the government may not foreclose its federal tax lien on the one-sixth cotenancy interest of a delinquent taxpayer in nonhomestead realty. In language which applies with equal validity to the situation in the instant case, we said:

> The Government has a right to pursue the property of the taxpayer with all the force and fury at its command and by proper procedure obtain the last vestige of title and every right which such taxpayer owns. The law does not authorize

---

**10.** This implication was correctly seen by the Tenth Circuit in *United States v. Hershberger*, 475 F.2d at 682. Relying in part upon *Weitzner*, the *Hershberger* court properly refused federal levy in the same factual setting when the homestead laws of the state involved in that case did create a property right in the nontaxpayer spouse opposing the levy of the tax lien.

**11.** The government notes that we also stated in *Carter* that "the Louisiana homestead exemption laws are not effective against federal tax liens. . . ." 399 F.2d at 342. The government reasons from this statement that the Texas homestead laws in the instant case are ineffective in every respect against the federal tax liens involved here. The government, however,

has failed to read this language in the context of the entire sentence. Following this language, we then said, in the same sentence: "and, thus, the filing of the homestead exemption by [the nontaxpayer spouse] and her husband did not affect or destroy the *validity* of the government's tax lien." *Id.* (footnote omitted) (emphasis added). When the sentence is read as a whole, one can see that the Louisiana homestead exemption laws were not "effective" to the extent or in the sense that they did not "affect or destroy the validity" of the government's liens. This statement is merely a reiteration of the rule, discussed *supra*, that a federal tax lien prevails when posed against the taxpayer spouse's homestead interest standing alone.

the Government, however, in its pursuit, to force a public sale of the property of other joint owners.... The Government is not a joint owner or tenant in common and does not have the property rights incident to such a relationship.

*Id.* at 367. Underlying our reasoning was the view of this Circuit that, when a delinquent taxpayer shares his ownership interest in property jointly with other persons rather than being the sole owner, his "property" and "rights to property" to which the federal tax lien attaches under 26 U.S.C. § 6321, and on which federal levy may be had under 26 U.S.C. § 7403(a), involve only his *interest* in the property, and not the entire property. *Id.*[12]

■ Finally, we point out that courts are not compelled to foreclose a federal tax lien when the government brings a foreclosure action. Instead, Congress intended for courts to exercise their equitable powers in deciding whether to allow such foreclosure. *United States v. Boyd*, 246 F.2d 477, 481 (5th Cir. 1957), *cert. denied*, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 188 (1957); *United*

*States v. Morrison*, 247 F.2d 285, 289–90 (5th Cir. 1957).

■ Accordingly, in this Circuit, when the federal government seeks to enforce a tax lien against the homestead interest of a delinquent taxpayer, and his or her spouse has no tax liability, the outcome of the case will turn on whether the homestead laws of the particular state merely create an exemption from general creditors or whether they instead confer a present property right in the person possessing the homestead interest.[13] If a homestead interest is merely an exemption under state law, federal levy may be had upon the taxpayer spouse's homestead interest despite the equal interest of the nontaxpayer spouse. If, on the other hand, a homestead interest is, under state law, a property right, possessed by the nontaxpayer spouse at the time the lien attaches to the taxpayer spouse's interest,[14] then the federal tax lien may not be foreclosed against the homestead property for as long as the nontaxpayer spouse maintains his or her homestead interest under state law.[15] To make this determination in

**12.** Other circuits, taking the opposite view, have held that the government may reach the entire "property" in which the taxpayer has an "interest" rather than being limited merely to his "interest" in the property. In those circuits the government therefore is entitled to sell the entire joint tenancy property rather than just the taxpayer's interest therein. *See United States v. Trilling*, 328 F.2d 699, 702–03 (7th Cir. 1964); *Washington v. United States*, 402 F.2d 3, 6–7 (4th Cir. 1968), *cert. denied*, 402 U.S. 978, 91 S.Ct. 1641, 29 L.Ed.2d 145 (1971); *United States v. Overman*, 424 F.2d 1142, 1146 (9th Cir. 1970); *United States v. Kocher*, 468 F.2d 503, 506–07 (2d Cir. 1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973); *see also United States v. Eaves*, 499 F.2d 869, 870–71 (10th Cir. 1974), approving *Trilling*, but concluding that the question whether the entire joint tenancy property or only the taxpayer's interest therein is to be sold should be resolved by the district court exercising its discretion.

**13.** The court in *Herndon v. United States*, 501 F.2d at 1221–22, inaccurately characterized the law in the Fifth Circuit on this point. That court incorrectly portrayed this Circuit as being in agreement with the position, adopted by the *Herndon* court, that a federal tax lien may be foreclosed in the situation involved in this case regardless of the nature of the interest created by the state's homestead laws. *Id.*

**14.** The homestead interest must be a present property right at the time the lien attaches to the taxpayer spouse's homestead interest rather than a future property interest or one acquired after lien attachment. Thus, for example, the future interests of the taxpayer spouse's heirs or devisees which become present possessory interests upon the nontaxpayer spouse's death, and the homestead interest in the property of any subsequent spouse of the nontaxpayer spouse, may not defeat the federal tax lien once the nontaxpayer spouse's homestead interest has ceased to exist under state law.

**15.** In *Broday v. United States*, this Court declined to use the distinction between an exemption and a property right under state law in the context of enforcing a federal tax lien against the nonhomestead community property interest of the nontaxpayer spouse of a delinquent taxpayer. Quoting *United States v. Overman*, 424 F.2d at 1145 (federal tax lien enforced against community property—the nature of which is not indicated—of Washington couple for tax liability of one spouse), the *Broday* case stated that "all that section 6321 requires is that the interest be 'property' or 'rights to property.' It is of no statutory moment how extensive may be those rights under state law, or what restrictions exist in the enjoyment of those rights."

the case at hand, we must analyze Texas law on the nature of a homestead interest in that state.

■ Although there are some cases to the contrary,[16] the overwhelming weight of the authority in Texas law holds that a Texas homestead interest is a property right in the nature of an estate in land. In *Woods v. Alvarado State Bank*, 118 Tex. 586, 19 S.W.2d 35 (1929), the leading Texas case, the Texas Supreme Court initially set out the distinction between a homestead interest as an exemption and one as a property right:

> Generally it may be said that there are two concepts of the effect of constitutional and statutory provisions relating to the homestead. One is that these laws confer

---

455 F.2d at 1101 (citation omitted). The court concluded that "the right of the United States to enforce its liens does not depend upon state laws which regulate the rights of creditors generally and does not depend upon whether the 'exemption' label is attached to the particular statute in question." *Id.*

Although this language in *Broday* would suggest that the exemption-property right distinction should not be employed in the instant case as well, *Broday* involved nonhomestead community property, in contrast to *Weitzner*, which did involve homestead community property and which relied on the exemption-property right distinction to resolve the suit. Further, the language in *Broday* has since been cited in only one federal case, *Short v. United States*, 395 F.Supp. 1151, 1154 (E.D.Tex.1975), a case similar to *Broday* in that it too involved nonhomestead community property. Moreover, the rule in *Weitzner* is consistent with our holdings in *Carter* and *Folsom*. Additionally, the language in *Broday*, viewed narrowly, is actually dicta, since this Court specifically found that the state statute involved in that case was an exemption statute. 455 F.2d at 1101. We therefore follow the exemption-property right distinction used by this Court in *Weitzner*.

16. In *Foster v. Johnson*, 89 Tex. 640, 645, 36 S.W. 67, 69 (1896), the Texas Supreme Court stated:

> The homestead right [of the surviving spouse] under the constitution was not an estate in land, but simply a right to use and occupy it for a specified purpose, upon the contingency that it would cease whenever it was not occupied and used for that purpose.

Several decades later, the Texas Supreme Court, relying on *Foster* and the similar case of *Lee v. McFarland*, 19 Tex.Civ.App. 292, 46 S.W. 281 (1898, writ ref'd) (citing *Foster*), again stated:

> [U]nder the law, [testator's widow] could use the home place so long as she saw fit to occupy same as a homestead. This is not an estate. When the home place ceased to be used as a homestead, the interest owned therein by her deceased husband would go to the devisees described in the will.

*Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620, 625 (1935) (citations omitted). The statement in *Dakan* that a homestead is not an "estate"

was later cited by the court in *White v. Glenn*, 138 S.W.2d 914, 919 (Tex.Civ.App.—Amarillo 1940, writ dism'd judgmt cor.).

Viewed in isolation, these cases tend to suggest that a Texas homestead interest is not a property right under Texas law. Closer analysis of Texas law, however, reveals that, for several reasons, the above four cases do not reflect Texas law on the nature of a Texas homestead interest. First, the statement in *Foster*, on which the other three cases ultimately relied for the proposition that a homestead is not an "estate," was itself made on a somewhat weak foundation, in light of language of the Texas Supreme Court in a case, *Stallings v. Hullum*, 89 Tex. 431, 35 S.W. 2 (1896), decided the same year as *Foster*. In *Stallings*, the Texas Supreme Court held that an attempted conveyance by a husband alone of a homestead did not convey the wife's interest nor did it even transfer the husband's one-half interest as soon as the land ceased to be the couple's homestead. Significantly, the Texas Supreme Court stated:

> It is not simply the alienation of the homestead right—that is to say the right of occupancy—that is prohibited [by Tex.Const. art. XVI, § 50]; it is the alienation of the *property itself*, the land or the lots, as the case may be. * * * *The mere privilege of possession and enjoyment is not the measure of her right in the homestead.*

35 S.W. at 3 (emphasis added). The italicized portion of this quotation places into serious question the weight to be accorded the statement in *Foster*, quoted *supra*, that the Texas homestead right is merely one of use and occupancy.

Second, aside from reliance on one another, none of the above four cases has been cited by either the Texas Supreme Court or lower Texas state courts for the proposition, advanced by each of the four cases, that a Texas homestead is not an "estate."

Finally, the above four cases are contrary to the majority of Texas cases on the subject of the nature of a Texas homestead interest, including the Texas Supreme Court's most recent pronouncement, in *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d at 114, that "[i]t is well established that the homestead right, when fixed, is an estate in land. . . ."

a mere privilege of exemption, which operates to prevent the use of the process of the court to sell certain property for the payment of debts. The other is that the homestead right is considered an estate in land vested in the person designated by law.

19 S.W.2d at 35. After engaging in an extensive and thorough analysis of the historical development of the Texas homestead laws, the Texas Supreme Court concluded:

> [W]hen the constitutional provisions and statutes relating to the homestead are analyzed, we think the conclusion is inescapable that *their purpose and effect is to create estates as distinguished from mere privileges of exemption or possession.*

19 S.W.2d at 37 (emphasis added).

The Texas Supreme Court reiterated this view of a Texas homestead interest as being a property right in the nature of an estate in land, in *Paddock v. Siemoneit,* 147 Tex. 571, 218 S.W.2d 428 (1949):

> In Texas, we have held that the homestead is to be regarded as an *estate* created not only for the protection of the family as a whole, but for the units of the family. The wife has a *vested estate in the land* of which she cannot be divested during her life except by abandonment or a voluntary conveyance in the manner prescribed by law.

218 S.W.2d at 436 (emphasis added). The great majority of other Texas cases are in accord with this position. *See, e. g., O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d 112, 114 (Tex.1976), *recalled on other grounds,* 551 S.W.2d 32 (Tex.1977) ("homestead right, when fixed, is an estate in land exempt from execution"); *Rancho Oil Co. v. Powell,* 142 Tex. 63, 175 S.W.2d 960, 965 (1943); *Cocke v. Conquest,* 120 Tex. 43, 35 S.W.2d 673, 678 (1931) (estate in land); *Sargeant v. Sargeant,* 118 Tex. 343, 15 S.W.2d 589, 593 (1929); *Hargadene v. Whitfield,* 71 Tex.

482, 9 S.W. 475 (1888); *W. T. Rawleigh Co. v. Blackwell,* 48 S.W.2d 754 (Tex.Civ.App.—Amarillo 1932, writ dism'd); *Sparks v. Robertson,* 203 S.W.2d 622, 623 (Tex.Civ.App.—Austin 1947, writ ref'd); *Crews v. General Crude Oil Co.,* 287 S.W.2d 243 (Tex.Civ.App.—Beaumont 1955, no writ); *Norman v. First Bank & Trust, Bryan,* 557 S.W.2d 797 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n. r. e.).

In *Evans v. Mills,* 67 F.2d 840 (5th Cir. 1933), this Court defined the nature of a Texas homestead interest under Texas law in the same terms that the Texas cases have employed:

> A homestead interest in Texas is not, as in some states, a mere exemption. It is a title in the land, of which, according to the settled public policy of the state, the owner may not be deprived except by abandonment or by the conveyance executed as required by statute.

*Id.* at 841 (citations omitted).

■ In light of the above authority, we must conclude that a Texas homestead interest is more than an exemption from the claims of general creditors under Texas law. It is an undivided, vested property right in land. Under our rationale in *Weitzner* and the analogous cases of *Carter* and *Folsom,* it follows that the government in the instant case may not foreclose its federal tax liens on the homestead interest of the deceased taxpayer—and thus on the homestead property at all—for as long as Mrs. Rodgers, the nontaxpayer spouse, complies with the requirements of Texas law for maintaining one's homestead.[17] Mrs. Rodgers' undivided one-half interest in the homestead property vested when the property was purchased during her marriage with the deceased taxpayer and continued under Texas law[18] after his death.[19] This interest was, and continues to be, a property right separate and apart from that of her

---

17. Included in these laws would be, for example, those relating to the exchange of one's homestead for a new homestead. *See, e. g., Ellis v. Light,* 73 S.W. 551 (Tex.Civ.App.1903, writ ref'd).

18. Tex.Const. art. XVI, § 52.

19. Under Texas law, it is clear that Mrs. Rodgers' remarriage did not affect the homestead status of her interest in the property. *See Rancho Oil Co. v. Powell,* 142 Tex. 63, 175 S.W.2d 960 (1943).

deceased husband, and may not at present effectively be destroyed, as would be the result, by federal levy on the one-half interest held by the deceased taxpayer during his lifetime. The district court therefore correctly granted summary judgment to appellees on the issue of foreclosure of the federal tax liens on the homestead property involved here.

## II. *Attorney's Fees*

The government's second contention is that the district court abused its discretion in awarding attorney's fees to appellees under 42 U.S.C. § 1988 (1976). We agree.

■ The Civil Rights Attorney's Fees Awards Act of 1976 provides, in pertinent part:

> [I]n any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988 (1976). In order for a taxpayer to be eligible to recover attorney's fees under § 1988 in his tax dispute with the government, he must be the defendant in the lawsuit. *Prince v. United States*, 610 F.2d 350, 352 (5th Cir. 1980); *Key Buick Co. v. C. I. R.*, 613 F.2d 1306, 1308–09 (5th Cir. 1980). To recover attorney's fees, the defendant taxpayer must demonstrate that the government's action was frivolous, unreasonable, or without foundation, although he need not show subjective bad faith. *Jones v. United States*, 613 F.2d 1311, 1313 (5th Cir. 1980).

■ In the case before us, appellees, defendants below, failed to show even the slightest justification for the attorney's fee award that they requested and received. There is no evidence whatsoever that the government's action was frivolous, unreasonable, or without foundation. To the contrary, the substantive legal issue in this case was complex and difficult to resolve. The government had ample justification for bringing this suit, even though our decision

is not in its favor. We therefore are compelled to conclude that the district court acted outside of its discretion in awarding attorney's fees to appellees. We reverse the district court on this point.

To summarize, we affirm the district court's granting of summary judgment to appellees on the issue whether the government may execute its federal tax liens on the Texas homestead involved here, but reverse the district court's award of attorney's fees to appellees.

AFFIRMED IN PART AND REVERSED IN PART.