In re Paul LEVENHAR, Debtor.

Ira S. GREENE, as Trustee of the Estate of Paul Levenhar, Plaintiff,

v.

Paul and Miriam LEVENHAR, Defendants.

Bankruptcy No. 181–11670–21.
Adv. No. 182–0112–21.

United States Bankruptcy Court,
E.D. New York.

June 29, 1983.

Gainsburg, Gottlieb, Levitan & Cole, New York City, for plaintiff; Ira S. Greene, New York City, of counsel.

Sidney S. Bobbe, New York City, for debtor and defendants.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

This is a proceeding brought by the trustee in bankruptcy of Paul Levenhar against the debtor and his wife, Miriam Levenhar, to establish the right of the trustee to sell, pursuant to § 363(h) of the Bankruptcy Code, the interest of both the debtor and his wife in a cooperative apartment located in Little Neck, New York. The complaint asks permission to make the sale and to retain on behalf of the debtor's estate half the sale price, minus the $10,000 homestead exemption claimed by the debtor pursuant to CPLR 5206. Evidently, what the trustee contemplates is turning over half the proceeds of the sale of the cooperative apartment to the debtor's wife, Miriam Levenhar, and keeping the balance for the estate, except for $10,000 to be remitted to the debtor as his homestead exemption.

## THE FACTS

At the trial of this proceeding, both sides submitted a stipulation of facts reading in its entirety as follows:

"1. A voluntary petition for relief under Chapter 7 of the Bankruptcy Code was filed by Paul Levenhar ('debtor') in the United States Bankruptcy Court for the Eastern District of New York on May 18, 1981.

"2. The Plaintiff, Ira S. Greene, as Trustee of Paul Levenhar ('Plaintiff'), is the duly elected and qualified Trustee of the estate and property of the debtor.

"3. On February 25, 1982, and by way of amendment on May 13, 1982, the plaintiff commenced an adversary proceeding to sell a cooperative apartment pursuant to Section 363(h) of the Bankruptcy Code.

"4. The debtor is an individual residing at 252–42 58th Avenue, Little Neck, New York 11362.

"5. Miriam Levenhar, defendant herein ('defendant'), is the debtor's wife and resides at 252–42 58th Avenue, Little Neck, New York 11362.

"6. On August 30, 1976, the debtor and defendant purchased a Cooperative apartment located at 252–42 58th Avenue, Apt. # 163, Little Neck, New York 11362, ('Co-op').

"7. The proprietary lease evidencing the debtor and defendants purchase of this Co-op indicates their respective interest as 'tenants by the entirety'.

"8. The fair market value of this Co-op is at least $42,500.00 and it can be transferred by the debtor and defendant pursuant to the terms of the lease.

"9. The debtor and the defendant own this Co-op free of all liens and encumbrances.

"10. Pursuant to Section 5206 of the C.P.L.R., the debtor is entitled to a Ten Thousand Dollars ($10,000.00) homestead exemption.

"11. Partition in kind of this Co-op among the estate and the defendant is impracticable.

"12. The Co-op is not used in the production, transmission or distribution, for

sale, of electricity or of natural or synthetic gas for heat, light or power.

"13. Upon representations made by the attorney for the debtor and defendant, the debtor was born on June 21, 1921, and the defendant was born on December 2, 1927."

No other evidence was presented by the plaintiff, who rested after submitting the stipulation. The defendants then moved for dismissal, and the Court reserved decision on their motion.[1]

The defendants then introduced uncontradicted evidence establishing the following:

In 1976, after the defendants had been living in the apartment they now occupy for many years, the building was converted into a cooperative (Tr., 2–3).[2] At the time of the conversion, the defendants assumed certain obligations owed by Deepdale Gardens First Corporation ("Deepdale") (DX–1); received a proprietary lease from Deepdale (DX–2); and one share of stock in Deepdale (DX–3). In all three documents—the assumption agreement, the lease, and the stock certificate—the defendants are described as "tenants by the entirety."

Defendants were also given a copy of Deepdale's Bylaws (DX–4; Tr., 4). These bylaws provide that it is the object of the corporation to give priority to World War II veterans and every effort will be made to maintain 65 percent veteran occupancy (DX–4, at 1). When Mr. Levenhar first took occupancy of the apartment, he was required to demonstrate that he was a veteran (DX–5; Tr., 4).

## DISCUSSION

This proceeding is brought under § 363 of the Bankruptcy Code, which changes prior law with respect to marital property in several respects. For the first time, the trustee of a debtor is given the right to sell the interest of the nonfiling spouse, as well as the interest of the debtor, in non-utility property if certain conditions are met: partition in kind must be impracticable; sale of the estate's interest would realize significantly less than sale free of the interests of co-owners; and benefit to the estate outweighs the detriment, if any, to such co-owners.[3]

Certain protection is given the co-owner. The nonfiling spouse has the right to purchase the property at the price at which a sale would be consummated (11 U.S.C. § 363(i)). Further, if the co-owner's interest is sold, the co-owner is entitled to "the proceeds of such sale, less the costs and expenses * * * of such sale * * * according to the interests of such spouse or co-owners, and of the estate." 11 U.S.C. § 363(j).

Both § 363, and its application to the type of property here involved, is discussed in the previous Opinion of this Court written in this matter dated October 26, 1982, with which familiarity will be assumed.

Throughout this proceeding, counsel for the defendants has contended that if § 363(h) were to be interpreted retrospectively as applying to the interest of Miriam

---

1. After the parties submitted the stipulation of facts, the Court mistakenly assumed that this represented all the evidence both parties desired to present. In fact, it was only a partial stipulation which defendants desired to, and did, augment by additional testimony.

2. References designated "Tr." are to the hearing of March 10, 1983.

3. Section 363(h) reads in its entirety:

"(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, immediately before the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

"(1) partition in kind of such property among the estate and such co-owners is impracticable;

"(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

"(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

"(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power."

Levenhar in this cooperative apartment acquired in 1976, it would be unconstitutional. Therefore, in deference to the well-established principle recognized in *United States v. Security Industrial Bank*, —— U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), that statutes are to be interpreted so as to avoid even the specter of a constitutional issue,[4] § 363(h) should not be deemed applicable to Miriam Levenhar's interest.

It is not necessary for this Court, however, to reach these difficult questions of statutory interpretation and constitutionality because the Court has concluded that the trustee has failed to satisfy the conditions laid down in § 363(h), so as to give him a right to sell the interest of Miriam Levenhar, as well as that of her husband, in the cooperative apartment which they jointly own and occupy.

For the trustee to prevail, he must establish that sale of the estate's undivided interest in the cooperative would realize significantly less for the estate than sale of such property free of the interest of Miriam Levenhar, and that the benefit to the estate of a sale of such property free of the interest of Miriam Levenhar would outweigh the detriment, if any, to Miriam Levenhar. In the very sparse record made by the trustee, the only facts even remotely bearing on these two issues are that the fair market value of the cooperative is $42,500; that the debtor and his wife own this property free of all liens and encumbrances; that Miriam Levenhar is residing in the apartment; and that she is 55-years-old and her husband is six years older.

It evidently is the trustee's position that these facts necessarily prove that the conditions laid down in the statute have been met. He finds support for this position in *In re Ivey*, 10 B.R. 230, 4 C.B.C.2d 351 (Bkrtcy.N.D.Ga.1981). He argues that unless he can sell the entire property, all he would be able to transfer would be an "undefined contingent future right which may never result in possession of this property by any prospective purchaser." Plaintiff's Post-Trial Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 5. This demonstrates, he contends, that sale of the estate's interest alone would bring less than sale of the interest of both the estate and of the nonfiling spouse. In effect, he invites the Court to take judicial notice that a right of the kind he could transfer, if limited to the sale of the debtor's interest alone, will bring little, or nothing, in the marketplace.

As to the balance of benefit to the estate and detriment to the co-owner, the trustee argues that the benefit to the estate, which he calculates to be $11,250 ($42,500 minus Mrs. Levenhar's 50% interest ($21,250), minus the debtor's homestead exemption ($10,000)) outweighs the detriment to Mrs. Levenhar because she will receive "her share of the value of the co-op and will have the opportunity to purchase the entire property at the proposed sale * * *." Plaintiff's Post-Trial Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 5.

It appears to the Court that the trustee in this case is attempting, in effect, to read 11 U.S.C. §§ 363(h)(2) and (3) out of the statute. Merely from the fact that the gross price for the sale of the entire property will exceed the price for the sale of the debtor's interest alone, the trustee assumes that the conditions laid down in § 363 have been satisfied.

This assumption builds on a mistaken premise, which is that the nonfiling spouse is entitled to only 50 percent of the gross proceeds of the sale of the interest in the cooperative held jointly by her and the debtor. In making that assumption, the trustee takes too simplistic a view of a complicated problem. Mrs. Levenhar may be entitled to as much as 95 percent of the gross proceeds. This is well-illustrated by *United States v. Rodgers*, —— U.S. ——,

---

**4.** The principle has most recently seen acknowledgment in *Roth v. Pritikin,* 710 F.2d 934 at 939 (2d Cir.1983), *citing,* in addition to *Security Industrial Bank, Lorillard v. Pons,* 434

U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978); *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932).

103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), *reversing and remanding* 649 F.2d 1117 (5th Cir.1981), recently decided by the Supreme Court and involving an analogous problem. That case concerned the power of a District Court, under § 7403 of the Internal Revenue Code, to order the sale of a family home in which a delinquent taxpayer had an interest, but in which the taxpayer's spouse, who did not owe the delinquent taxes, also had a separate "homestead" right under local state law. The statute there involved, like § 363(j) of the Bankruptcy Code, required a distribution of the proceeds of the sale of property in which someone other than a taxpayer held an interest "according to the findings of the court in respect to the interests of the parties and of the United States." *United States v. Rodgers, supra,* at ——, 103 S.Ct., at 2134–36.

As the dissent in the *Rodgers* case pointed out, the Texas homestead law creates a spousal property interest similar to tenancies by the entirety. At ——, 103 S.Ct., at 2156–57. Under Texas law, each spouse to a marriage has "a separate and undivided possessory interest in the homestead, which is only lost by death or abandonment, and which may not be compromised either by the other spouse or by his or her heirs." At ——, 103 S.Ct., at 2138 (footnotes omitted). Similarly, as the dissent had occasion to point out, "a tenancy by the entirety usually vests the entire estate in both spouses, bars either spouse from disposing of it without the concurrence of the other, and prevents either spouse from destroying the other's survivorship rights." at —— n. 11, 103 S.Ct., at 2156 n. 11. The homestead laws, the Supreme Court majority said, "have the effect of reducing the underlying ownership rights in a homestead property to something akin to remainder interests and vesting in each spouse an interest akin to an undivided life estate in the property." At ——, 103 S.Ct., at 3138–39.

This analysis of the nature of the property rights inhering in each spouse laid the predicate for the portion of the opinion of direct pertinency to this case.

There, as here, the statute was attacked as involving a taking of the property of an innocent third party in violation of due process. The Court turned that attack aside, pointing out that there was not a "gratuitous confiscation of the third party's property," but a taking for which compensation was paid:

"To the extent that third-party property interests are 'taken' in the process, section 7403 provides compensation for that 'taking' by requiring that the court distribute the proceeds of the sale 'according to the findings of the court in respect to the interests of the parties and of the United States.'" At ——, 103 S.Ct., at 2144–45.

The Court then went on to describe how distribution had to be made to compensate for the taking of the type of interests it had found to be present: a life estate, plus a remainder. The Court said:

"For example, if we assume, *only for the sake of illustration,* that a homestead estate is the exact economic equivalent of a life estate, and that the use of a standard statutory or commercial table and an 8% discount rate is appropriate in calculating the value of that estate, then three nondelinquent surviving or remaining spouses, aged 30, 50, and 70 years, each holding a homestead estate, would be entitled to approximately 97%, 89%, and 64%, respectively, of the proceeds of the sale of their homes as compensation for that estate. In addition, if we assume that each of these hypothetical non-delinquent spouses also has a protected half-interest in the underlying ownership rights to the property being sold, then their total compensation would be approximately 99%, 95%, and 82%, respectively, of the proceeds from such sale." (Emphasis in original; footnotes omitted.) At ——, 103 S.Ct., at 2145.

These percentages are very different from the 50 percent which the trustee in this case has assumed to be the compensation to which Mrs. Levenhar would be enti-

tled out of the proceeds of the sale of the Levenhar property. Mrs. Levenhar is now 55-years-old. Making the same assumptions as the Supreme Court made in *Rodgers,* she is entitled to between 64%–89% of the gross proceeds from the sale of the cooperative in recognition of the value of her life estate. Furthermore, if, like the wife in *Rodgers,* she also has a protected half interest in the underlying ownership rights, her percentage share goes up to a figure between 82%–95%. If she has not a protected half interest, but a right of survivorship, her percentage probably would be even higher in view of the fact that she is six years younger than her husband, and women have a longer life expectancy than men.

What precisely is the percentage share of the proceeds to which Mrs. Levenhar would be entitled is a matter of proof, as to which the burden lies on the trustee, since he must establish that the estate would receive more from the sale of the property in its entirety even after distribution of Mrs. Levenhar's share to her, than it would receive from sale of Mr. Levenhar's interest alone. If, as seems not unlikely, the estate would receive no benefit because of Mr. Levenhar's $10,000 homestead exemption, the cooperative should not be sold, no matter how little sale of Mr. Levenhar's undivided interest would bring. On this critical issue, the trustee has submitted no evidence; it cannot be determined from this sparse record what is the value of Mrs. Levenhar's life estate. The trustee has, likewise, given the Court no aid with respect to the nature of the other property right held by Mrs. Levenhar (*i.e.,* whether she has an indefeasible half-interest or a right of survivorship), and to its value.

In order to determine whether benefit to the estate of the sale of Mrs. Levenhar's property will bring more than the sale of Mr. Levenhar's interest in the loan, it is necessary to know what percentage of the total proceeds will have to be paid to Mrs. Levenhar as compensation for her life estate and her undivided half interest, or right to survivorship, whichever is hers under the law of New York. On these critical issues, the trustee has left the record a blank and simply assumed erroneously a 50:50 division between the estate and Mrs. Levenhar. Therefore, the trustee has failed to establish that the conditions laid down in § 363(h)(3) have been met.

The record is also inadequate with respect to the detriment to the nondebtor spouse relevant to § 363(h)(3). On this question, the *Rodgers* case is also illuminating. After noting there that the requirements of due process were satisfied by the provision for the distribution of the proceeds, the Court added:

> "[W]e are not blind to the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head. This problem seems particularly acute in the case of a homestead interest. First, the nature of the market for life estates or the market for rental property may be such that the value of a homestead interest, calculated at some fraction of the total value of a home, would be less than the price demanded by the market for a lifetime's interest in an equivalent home." (Citation omitted) At ——, 103 S.Ct., at 2149.

The Court pointed out that these considerations should appropriately be taken into account by a court in deciding whether or not to allow a forced sale. These seem to be precisely the type of factors which the bankruptcy court is directed to weigh in determining whether the detriment to the nondebtor spouse outweighs the benefit to the estate.

But in this case, there is no evidence as to what it would cost Mrs. Levenhar to obtain a substitute roof over her head for the balance of her life. It would not be inappropriate to take judicial notice of the fact that in the present rental market in New York, the ability to pay a reasonable rent does not necessarily assure access to acceptable living quarters. Eviction of Mrs. Levenhar from her apartment might, in New York's current rental market, require a sharp reduction in living standards. Moreover, the apartment in which Mrs. Levenhar is living with her husband has apparently

been their marital residence for a quarter of a century, so that uprooting her would have a psychic cost for which the statute provides no financial compensation. For the Court to order sale of her apartment over her opposition requires evidence more persuasive as to lack of detriment than has been proffered by the trustee.

In short, the trustee has failed to meet the burden placed upon him by the statute as a condition precedent to the right to sell the estate of Mrs. Levenhar. The motion to dismiss at the end of plaintiff's case is granted.

## CONCLUSIONS OF LAW

1. The trustee has failed to establish *prima facie* his right to sell both the estate's interest, and the interest of Mrs. Levenhar in the stock and the lease to the cooperative apartment which the defendants own as tenants by the entirety.

2. The evidence does not establish that sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interest of Mrs. Levenhar, and that the benefit to the estate of such a sale outweighs the detriment to Mrs. Levenhar.